Michael and Jane TIMMS, on Behalf of their minor child, Sarah TIMMS, as parents and natural guardians, and Sarah Timms, individually, Plaintiffs-Appellants,

v.

METROPOLITAN SCHOOL DISTRICT OF WABASH COUNTY, INDIANA, et al., Defendants-Appellees.

No. 82–3084.

United States Court of Appeals, Seventh Circuit.

Argued April 15, 1983.

Amended Opinion Nov. 18, 1983.*

---

* The original panel opinion in this case was issued on September 19, 1983, 718 F.2d 212. On further consideration of the petition for rehearing and Judge Cudahy's forceful dissent to that opinion, we have decided to amend the opinion, and now reach the same result on partially different grounds, as developed in the discussion below. The petition for rehearing is denied herewith.

Ernest M. Beal, Jr., Peters, Terrill, Parrish & Larson, Fort Wayne, Ind., for plaintiffs-appellants.

Bryon L. Myers, Ice, Miller, Donadio & Ryan, Eric M. Cavanaugh, Deputy Atty. Gen., Indianapolis, Ind., for defendants-appellees.

Before CUDAHY and ESCHBACH, Circuit Judges, and SWYGERT, Senior Circuit Judge.

SWYGERT, Senior Circuit Judge.

Sarah Timms, through her guardians and parents Michael and Jane Timms, brought this action seeking declaratory, equitable, and monetary relief, charging that alleged insufficiencies in her educational program violated the Education for All Handicapped Children Act of 1975 ("EAHCA"), 20 U.S.C. §§ 1400–1420 (1976 & Supp. V 1981), section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 (1976), the Civil Rights Act of 1871, 42 U.S.C. § 1983 (1976 & Supp. V 1981), the equal protection and due process clauses of the fourteenth amendment to the United States Constitution, and Indiana state law. Defendants-appellees are the Metropolitan School District of Wabash County, Indiana ("School District"), the Indiana State Board of Education, the Wabash-Miami Area Program for Exceptional Children, Dr. Harold H. Negley, the State Superintendent of the Indiana Department of Public Instruction, and Dr. Edward Kasamis, the Superintendent of the School District. For the reasons that follow we affirm the district court's dismissal of the action.

## I

Sarah Jane Timms is a profoundly handicapped young woman, born on November 30, 1962. In infancy she was diagnosed as suffering from psychomotor retardation, epilepsy, and a congenitally dislocated left hip. Occupational therapy, psychological, and speech evaluations conducted in 1980 revealed that her developmental age in various categories ranged from two to twenty-one months. Sarah has no expressive verbal skills. She has been institutionalized since 1967 at various state hospitals and nursing homes, most recently at the Vernon Manor Nursing Home in Wabash, Indiana, where she was placed in 1975 with the aid of the Indiana Department of Mental Health. Her placement at Vernon Manor was occasioned by her increasing tendency toward self-abuse, consisting of biting herself and striking herself about the head with her hands and arms, which has resulted in scarring and deformation of her eyes. Ordinarily Sarah must be restrained in her wheelchair by the use of splints that prevent her from bending her elbows.

Until 1979 Sarah received one one-hour educational session daily. An annual case conference was held on March 27, 1979, to develop an individualized education program ("IEP") for Sarah for 1979–80, required as a condition for federal funding under the federal-state cooperative program authorized by the EAHCA, 20 U.S.C. §§ 1401(19), 1412(4), 1414(a)(5) (1976); 34 C.F.R. §§ 300.130, 300.340–.349 (1982), and implemented by the state of Indiana, Ind. Code § 20–1–6–1(e) (Cum.Supp.1981); Ind. Admin.Code ch. 510, § 7–1–3(i) (Cum.Supp. 1982). Mrs. Timms attended the conference and requested that Sarah be placed in a full-day instructional program in the hope that increased attention would stem her persistent self-abuse. The School Board, relying on Sarah's teacher's observations of a correlation between the level of self-abuse and the level of activity and demands put on the child, see Annual Case Conference Review, Record of Administrative Proceedings ("AR") 344, instead offered to increase the instruction to two forty-five minute periods per day, with possible further increases. See 1979 IEP, AR 278, 279.

Mrs. Timms authorized the implementation of the expanded program, but withheld approval of the IEP because she continued to believe full-day instruction would be beneficial. Rather, on May 5, 1979, she filed objections to the IEP and requested that a hearing examiner be appointed to consider the appropriateness of the program. See 20 U.S.C. § 1415(b)(2) (1976); 34 C.F.R. §§ 506–509 (1982); Ind.Admin.Code ch. 510, § 7–1–3(g) (Cum.Supp.1982). A hearing officer was appointed on May 23, 1979. Following the administrative hearing, held on October 19, 1979, by mutual agreement of the parties, the hearing officer found that Sarah's IEP did not state why her instruction should be less than full-day, and that she should be placed in a full-day program. The School Board sought review of this decision by the Commission on General Education of the Indiana State Board of Education ("Commission"), the body authorized by state law, see id. § 7–1–3(h), to hear such appeals. See 20 U.S.C. § 1415(c) (1976) (authorizing second-tier state review). The Commission agreed with the hearing officer that Sarah's IEP failed to articulate a reason for less than full-day instruction, but rejected for lack of substantial evidence her additional conclusion that Sarah's self-abuse would not be aggravated by additional instruction. Because a shortened instructional day might have been warranted by a correlation between the level of self-abuse and the length of instruction, but such a correlation had been neither proved nor disproved, the Commission remanded the case for professional evaluations on this issue and for the development of a new IEP. See Ind.Admin.Code ch. 510, § 7–1–3(h)(6)(C) (Cum.Supp.1982) (authorizing remands by the Commission). It also ordered that the hearing officer report by May 1, 1980, concerning progress made in the evaluation.

On March 25, 1980, before a report could be made, the parents filed this suit, seeking both equitable and monetary relief. The equitable portion of the complaint and accompanying motions sought a temporary restraining order, a preliminary injunction, and a permanent injunction to restrain the

defendants from excluding Sarah from a full-day instructional program. Following a hearing the district court issued a partial judgment denying all equitable relief on the ground that adequate justification existed for the shortened program. On appeal, a panel of this court, in an unpublished order dated April 13, 1981, vacated the district court's judgment and remanded for reconsideration in light of the defendants' voluntary decision to place Sarah in a full-day program as of September 1980. That decision, we concluded, rendered the claims for preliminary injunctive relief moot, but left the claim for permanent injunctive relief open and particularly suitable for disposition, together with the still-pending claims for monetary relief, because of the availability of new, direct evidence of the effect of full-day instruction. *Timms v. Metropolitan School District,* 654 F.2d 726, slip op. at 5 & n. 4 (7th Cir.1981). At the same time, we left open the possibility of dismissal on remand for failure to exhaust available administrative remedies. *Id.* at 5 n. 5.

On remand the district court entertained motions for summary judgment from both sides and motions to dismiss from the defendants. It ruled in the defendants' favor on all issues in a comprehensive opinion. On the EAHCA claims it held in the alternative that the plaintiffs' failure to exhaust administrative remedies mandated dismissal; that damages in the form of "compensatory education" to make up for the shortened 1979–80 year, the only possible claim once Sarah began receiving full-day instruction, were precluded by *Anderson v. Thompson,* 658 F.2d 1205, 1213 (7th Cir. 1981) (damages not an available remedy for EAHCA violations), in the absence of bad faith on the part of the defendants, and that no evidence of bad faith had been presented; that summary judgment was proper on the merits because the state procedures satisfied the requirements of the EAHCA and because the preponderance of the evidence (sic) indicated that the procedurally-correct IEP was designed to provide educational benefit; and that the state was not required to maintain the status quo of full-day education under 20 U.S.C. § 1415(e)(3) (1976) and 34 C.F.R. § 300.513

(1982) during the pendency of the case once Sarah passed the age to which free education is provided under state law. On the Rehabilitation Act claims the district court held in the alternative that dismissal was proper because, under the rationale of *Anderson v. Thompson,* 658 F.2d at 1214–16, the EAHCA provided the exclusive remedy, and that summary judgment was proper in any case because 45 C.F.R. § 84.33(b)(2) provides that a procedurally-correct IEP satisfies the obligations of the Rehabilitation Act. On the section 1983 claims it held that under *Anderson, supra,* the EAHCA eclipses the general right of action provided by section 1983 to challenge state violations of federal statutory law; that summary judgment was proper on the equal protection claim because the evidence indicated that Sarah's placement, not facially discriminatory, was motivated by an educational judgment rather than by discrimination on the basis of her handicaps; and that summary judgment was proper on the due process claim because the EAHCA and Indiana law provided all the procedures required. Finally, on the pendent state law claims the district court held that summary judgment of the statutory claim was proper because the plaintiffs failed to specify what provision the defendants' conduct violated, but instead merely cited the entire Indiana special education law, Ind.Code §§ 20–1–6–1 to 20–1–6–20 (1976 & Cum.Supp.1981); and that summary judgment of the common law claim of professional negligence was proper because Indiana law does not provide a cause of action for educational malpractice. This appeal followed.

## II

The EAHCA provides that states participating in the federal funding program must provide a free appropriate public education to all handicapped children between the ages of three and eighteen not later than September 1, 1978, and all handicapped children between the ages of three and twenty-one by September 1, 1980, unless providing such services to children aged three to five or eighteen to twenty-one would be inconsistent with state law or

practice or a court order. 20 U.S.C. § 1412(2)(B) (1976). The proviso concerning children aged three to five and eighteen to twenty-one is clarified by regulations promulgated under the EAHCA, which specify that if a public agency provides free education to any non-handicapped children in these age groups it must provide free appropriate education to a proportionate number of handicapped children of the same age; that if a public agency provides education to fifty percent or more of its handicapped children in these age groups in any disability category it must provide free appropriate education to all handicapped children in that category and age group; and that a state is not obliged to provide free appropriate education to handicapped children in these age groups if state law does not provide free education to non-handicapped children of the same age. 34 C.F.R. §§ 300.300(b)(2), (3), (5)(i) (1982). Indiana state law provides that local school corporations may, but need not, provide special education for handicapped children below the age of six or above the age of eighteen, Ind.Code § 20–1–6–14(b) (Cum. Supp.1981), and seems to contemplate the provision of educational services to non-handicapped students up to the age of eighteen, *id.* § 20–8.1–3–2 (1976). In practice, ten of the 418 handicapped students enrolled in the defendant School District in 1981–82, or 2.39%, were eighteen or over, and twenty-four of the 3175 non-handicapped students enrolled during that year, or .76%, were eighteen or over. Affidavit of Noel G. Reed, Brief of School District, Supp. App. A. The School District therefore satisfies the EAHCA requirement that it provide educational services to handicapped students eighteen and older in at least the same proportion as it provides similar services to their non-handicapped peers.

■ Sarah Timms reached age eighteen on November 30, 1980. Except to the extent that remedial education is available as a remedy under the EAHCA, the plaintiffs' request for injunctive relief to prevent her future exclusion from full-time instruction is therefore moot because Sarah is past the age at which Indiana must provide her a

free appropriate public education. It is settled that our jurisdiction requires "an actual controversy . . . to exist at all stages of appellate review," *Central Soya Co. v. Consolidated Rail Corp.,* 614 F.2d 684, 687 (7th Cir.1980), and that dismissal is required "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack,* 395 U.S. 486, 496, 89 S.Ct. 1944, 1950, 23 L.Ed.2d 491 (1969). Moreover, the exception to the rule that current mootness strips the court of jurisdiction, in situations "capable of repetition yet evading review," does not apply here. This exception requires at least the possibility that "the same complaining party would be subjected to the same action again." *Weinstein v. Bradford,* 423 U.S. 147, 149, 96 S.Ct. 347, 348, 46 L.Ed.2d 350 (1975) (per curiam); *see also Central Soya Co.,* 614 F.2d at 689 ("there must be a reasonable degree of likelihood that this issue will be the basis of a continuing controversy between *these two parties*") (emphasis in original). Again, because Sarah is past the age of eighteen, there is no possibility that she will be subject to future mishandling of her IEP by the defendants. Cases cited by the plaintiffs are not helpful to their argument, involving as they do student-plaintiffs who would be entitled to continuing educational services in future years. *See, e.g., Robert M. v. Benton,* 634 F.2d 1139, 1141 n. 6 (8th Cir.1980) (eight-year-old student); *Espino v. Besteiro,* 520 F.Supp. 905, 911 n. 3 (S.D.Tex. 1981) (seven-year-old student); *Selelyo v. Drury,* 508 F.Supp. 122, 126–28 (S.D.Ohio 1980) (first grade student). Unless compensatory education is a permissible remedy under the EAHCA for past inappropriate placement, so as to extend the state's obligation to provide free appropriate public education past its usual terminus, the claim for equitable relief is therefore moot.

Whether compensatory education is an available remedy for violations of the EAHCA is an unsettled question in this circuit. The EAHCA provision granting parties aggrieved by state administrative decisions made pursuant to the Act the right to bring a federal civil action states that the court

"shall grant such relief as [it] determines is appropriate." 20 U.S.C. § 1415(e)(2) (1976). In *Anderson v. Thompson,* 658 F.2d at 1210–13, we interpreted this statutory language ordinarily to include only equitable and prospective relief, and therefore to preclude damages in the form of tuition reimbursement to parents whose decision to place their child in a private school was ultimately vindicated. The Eighth Circuit subsequently determined that remedial education designed to compensate a child for past inappropriate placement, because it is measurable against past deprivation, is so like damages as to be impermissible both under the *Anderson* statutory rationale and (as to defendants identifiable with the state) because of the sovereign immunity from damage awards accorded to the states by the eleventh amendment. *Miener v. Missouri,* 673 F.2d 969, 973, 979–80, 982 (8th Cir.), *cert. denied,* —— U.S. ——, ——, 103 S.Ct. 215, 230, 74 L.Ed.2d 182 (1982).

Whether the two remedies are indistinguishable is not so clear to us. In *Milliken v. Bradley,* 433 U.S. 267, 289–90, 97 S.Ct. 2749, 2761–62, 53 L.Ed.2d 745 (1977), the Supreme Court held that a desegregation decree including an order to provide remedial education, designed to compensate Detroit schoolchildren for the past effects of discrimination by supplementing their curriculum, withstood eleventh amendment scrutiny despite its compensatory purpose. The Court reasoned that Detroit's obligation to provide integrated education included an obligation to provide education free of the ghosts of past illegality:

> [T]he injunction entered here could not instantaneously restore the victims of unlawful conduct to their rightful condition. Thus, the injunction here looks to the future, not simply to presently compensating victims for conduct and consequences completed in the past.

*Milliken,* 433 U.S. at 290 n. 21, 97 S.Ct. at 2762 n. 21. It concluded that the compensatory education order, unlike damages, was prospective and therefore not barred by the state's immunity.[1]

Similarly, it might be argued that Indiana's obligation to provide Sarah Timms a free appropriate education entails an obligation to correct the effects of past shortfalls without falling foul of the eleventh amendment. This argument would undermine one of the grounds for the Eighth Circuit's decision in *Miener* that remedial education is an impermissible remedy. *Miener's* other ground, that remedial education is like damages and therefore precluded under *Anderson's* reading of the statute, may also be undermined because of the similarity between *Anderson's* concerns and those of the eleventh amendment: both theories allow prospective and equitable remedies. *Cf. Guardians Association v. Civil Service Commission,* —— U.S. ——, ——, 103 S.Ct. 3221, 3231, 3233, 77 L.Ed.2d 866 (1983) (opinion of White, J.) (comparing scope of relief under spending clause legislation to that available in eleventh amendment context). Moreover, *Anderson's* fear of burdening states with the obligation to pay lump-sum tuition reimbursements may be attenuated in the case of a remedial education order that extends a child's enrollment, both because of the economies of scale of including a child within the state's existing programs and because of the availability of federal funds for each handicapped child actually enrolled up through the age of twenty-one, even if the state

---

1. *See also Milliken,* 433 U.S. at 290, 97 S.Ct. at 2762 (footnotes omitted) (emphasis in original):

    These programs were not, and as a practical matter could not be, intended to wipe the slate clean by one bold stroke, as could a retroactive award of money .... Rather, by the nature of the antecedent violation, which on this record caused significant deficiencies in communications skills—reading and speaking—the victims of Detroit's *de jure* segregated system will continue to experience the effects of segregation until such future time as the remedial programs can help dissipate the continuing effects of past misconduct. Reading and speech deficiencies cannot be eliminated by judicial fiat; they will require time, patience, and the skills of specially trained teachers. That the programs are also "compensatory" in nature does not change the fact that they are part of a plan that operates *prospectively* to bring about the delayed benefits of a unitary school system. We therefore hold that such prospective relief is not barred by the Eleventh Amendment.

ordinarily does not provide such service past age eighteen. See 20 U.S.C. § 1411(a)(1)(A) (1976); 34 C.F.R. § 300.701 (1982). *Anderson* therefore does not dispose of this difficult issue, on which there is no independent legislative guidance.

■ We need not here define the precise limits of "appropriate relief" under the EAHCA, however, because the plaintiffs' failure to exhaust available state administrative remedies mandates dismissal of the EAHCA claim. The EAHCA requires such exhaustion before resort to the courts, leaving us without power to hear unexhausted claims. 20 U.S.C. § 1415(e)(2) (1976). The plaintiffs filed this claim while the appropriateness of Sarah's IEP in light of her self-abusiveness was still pending before the Indiana educational authorities. They argue, however, that they had exhausted all the procedures required by the Act because they had complied with the hearing and review procedures created by state law, Ind. Admin.Code ch. 510, §§ 7–1–3(g), (h) (Cum. Supp.1982), and the EAHCA provides for recourse to the federal courts following the completion of the second tier of the state procedures, 20 U.S.C. § 1415(e)(2) (1976). In effect, they argue that the remand ordered by the Commission, which conducted the second-tier review, interposed a third level of review, not authorized by the EAHCA, that they need not exhaust under the EAHCA's terms.

We find this argument unconvincing. The Indiana state plan, which has been approved by the Department of Education, the agency responsible for overseeing compliance with the EAHCA, see 1982 Rec. No. 22, Ex. A–B, specifically allows the Commission, when considering appeals, to "[r]emand the matter to the hearing officer with instructions to reopen the record and receive further evidence." Ind.Admin.Code ch. 510, § 7–1–3(h)(6)(C) (Cum.Supp.1982). The legislative history of the EAHCA confirms that Congress contemplated the need for reopening the record in appropriate circumstances. See S.Conf.Rep. No. 455, 94th Cong., 1st Sess. 50 (1975), *reprinted in* 1975 U.S.Code Cong. & Ad.News 1425, 1480, 1503 (noting that certain procedural rights "shall ... apply in State reviews of local agency hearings where the reviewing officer determines that a hearing should be conducted for purposes of taking new or additional evidence").

The plaintiffs argue that theirs is a special case, however, because the state determined, both at the hearing and on review, that Sarah's IEP lacked a statement why her instructional day was shortened. They assert that Indiana law creates a presumption that full-day instruction will be provided absent such a statement of reasons, and conclude that once the state's determination of this deficiency was final Sarah was entitled to the immediate benefit of the presumption.

Whatever merit this argument might have in other circumstances, it is not persuasive in the unusual circumstances of this case. It is true that the Commission currently has a Policy on Length of School Day and Length of School Year that requires IEPs to state the reasons for deviation from a policy of providing handicapped children the same number of hours of instruction as non-handicapped children in the same grade.[2] But this Policy was adopted on October 3, 1979, several months after the March 27, 1979, case conference at which the IEP in question was developed, and at the time it was developed the IEP complied with the only similar requirement then imposed by state law, that when less than

---

**2.** The policy provides:

Handicapped children shall be provided a school day which meets the State minimum standards as defined in the Administrative Handbook, Rule C., Section 1., M., which states: "School Day shall mean a minimum length of five (5) hours in grades 1 through 6, and six (6) hours in grades 7 through 12." A school day means the regularly scheduled, continuous period of time during a day when school is in session.

Handicapped children shall be provided a school year which meets the State minimum standards as defined in the Administrative Handbook, Rule C., Section N., which states: "School year shall mean a minimum length of 175 instructional school days in which pupils are in attendance."

The reason[s] for any deviation from this policy shall be documented in the Individualized Education Program.

full-day instruction is provided the IEP so state. Ind.Admin.Code ch. 510, § 7–1–2(H) (1979).[3] The Commission's decision to reopen the hearing to explore the correlation between self-abuse and length of instruction and to develop a new IEP in conformity with the Policy on Length of School Day therefore seems reasonable, because it sought to give Sarah the benefit of the Policy rather than deprive her of it.

Moreover, it is not clear that a federal court order that Sarah be placed in full-day instruction would be the appropriate remedy in this case. The Policy clearly states that for handicapped and non-handicapped children alike "School Day shall mean a minimum length of five (5) hours in grades 1 through 6, and six (6) hours in grades 7 through 12," but it does not state how the grade level of children so severely handicapped that their instruction consists primarily of physical therapy is to be determined. The plaintiffs suggest that the grade levels correspond to age levels, but this proposition is not obviously true; for example, we would not expect a child who repeats the sixth grade to be entitled to one more hour of instruction per day than his classmates. The proper interpretation of the state policy is necessarily uncertain. The combination of this uncertainty and the statutory entrustment of primary responsibility to the states to determine "appropriate" levels of education, see *Board of Education v. Rowley*, 458 U.S. 176, 206–209, 102 S.Ct. 3034, 3051–52, 73 L.Ed.2d 690 (1982), counsels deference to the state administrative process in this case. This is especially true here because if the School District's observation of a link between self-abuse and length of instruction proved correct, application of the asserted presumption without further hearing may have compromised Sarah's physical well-being. Because the plaintiffs failed to exhaust the administrative process, therefore, the dis-

trict court properly dismissed the EAHCA claims. Our holding eliminates the need to review the alternative theories relied on by the district court below.

■ The claims under section 504 of the Rehabilitation Act, 29 U.S.C. § 794 (1976), were properly dismissed for a similar reason. Section 504 provides that "[n]o otherwise qualified handicapped individual ... shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance ...." This provision has been interpreted by several courts to apply in the context of primary and secondary education, see, *e.g., Jose P. v. Ambach*, 669 F.2d 865, 871 & n. 4 (2d Cir.1982); *Tokarcik v. Forest Hills School District*, 665 F.2d 443, 449 & n. 8 (3d Cir.1981), *cert. denied*, —— U.S. ——, 102 S.Ct. 3508, 73 L.Ed.2d 1383 (1982); *S–1 v. Turlington*, 635 F.2d 342, 347 (5th Cir.), *cert. denied*, 454 U.S. 1030, 102 S.Ct. 566, 70 L.Ed.2d 473 (1981), and regulations promulgated under section 504 by the Secretary of Education require primary and secondary schools that receive federal funds to provide handicapped children a free appropriate public education, 34 C.F.R. § 104.33 (1982). Section 504 and the EAHCA therefore have considerable overlap.

■ We agree with the Eighth Circuit, however, that the Rehabilitation Act is broader than the EAHCA in the range of federally-funded activities it reaches, but narrower in the kind of actions it regulates. *Monahan v. Nebraska*, 687 F.2d 1164, 1170 (8th Cir.1982), *cert. denied*, —— U.S. ——, 103 S.Ct. 1252, 75 L.Ed.2d 481 (1983). As *Monahan* notes, *id.*, section 504 is prohibitory, forbidding exclusions from federally-funded programs on the basis of handicap, rather than mandatory, creating affirmative obligations. See *Southeastern Commu-*

---

**3.** Section 7–1–2(H) provides:

INSTRUCTIONAL DAY AND YEAR. The instructional day for all children in special education programs shall be equivalent to the instructional day for regular school programs for children at the same levels in the providing school unless specified otherwise in the child's individualized education program.

The instructional year for all children in special education programs shall be equivalent to the instructional year for regular school programs for children at the same levels in the providing school unless specified otherwise in the child's individualized education program.

*nity College v. Davis,* 442 U.S. 397, 410–12, 99 S.Ct. 2361, 2369–70, 60 L.Ed.2d 980 (1979). The EAHCA, by contrast, because of its focus on appropriate education, imposes affirmative duties regarding the content of the programs that must be provided to the handicapped. Because section 504 forbids exclusion from programs rather than prescribing the programs' content it reaches grosser kinds of misconduct than the EAHCA.

On its face the Timmses' complaint about Sarah's treatment seems to concern the appropriateness of her program rather than to charge that she was excluded. They argue, however, that the complaint is in fact about exclusion, because Sarah was excluded from several hours per day of instruction to which they claim she was entitled. Under this theory the question posed by section 504 (whether one is qualified for a program apart from one's handicap) incorporates the question posed by the EAHCA (whether the program is appropriate), merging the two statutory schemes. This conceptual peculiarity exists in the primary and secondary education context only because states that receive EAHCA funding must create an array of services so as to provide some program for which each handicapped child is qualified. Identifying that program is much the same as determining its appropriateness.

Whether or not section 504 itself can be the basis for a claim in these odd circumstances,[4] it cannot be used to circumvent the procedural requirements imposed by the EAHCA when the two claims are parallel, because to do so would thwart the intent of Congress, manifested in the structure of the more detailed and specific EAHCA. This is true for procedural challenges to state and local agency action as well as for challenges regarding substantive placement decisions, because the EAHCA provides for scrutiny of alleged procedural irregularities. *See Board of Education v. Rowley,* 102 S.Ct. at 3050. One of the EAHCA procedural requirements is exhaustion of administrative remedies. Dismissal of the plaintiffs' EAHCA claim for failure to exhaust also requires dismissal of their section 504 claim.[5]

**4.** Section 504 would most clearly be a proper basis for a claim in this educational context in a case in which a child is completely excluded from all programs, because then the EAHCA inquiry, the appropriateness of the program, would not be a central issue. Basing a claim on section 504 may have additional consequences not encountered under the EAHCA. For example, the strong language of section 504, which prohibits 'exclusion,' 'denial of benefits,' and 'discrimination,' has suggested to one court that the misconduct complained of must be deliberate or a gross misjudgment, at least in the context of educational judgments. *Monahan v. Nebraska,* 687 F.2d at 1170–71. This interpretation is partially weakened, however, by 29 U.S.C. § 794a(a)(2) (Supp. V 1981), which provides that the remedies, procedures, and rights set forth in Title VI of the Civil Rights Act of 1964 apply to actions under section 504. Because section 601 of Title VI, whose language is very similar to that of section 504, *see* 42 U.S.C. § 2000d (1976) ("No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."), has been held not to require proof of intentional discrimination except as a basis for compensatory relief, *see Guardians Ass'n v. Civil Serv. Comm'n,* 103 S.Ct. at 3235

n. 27, that standard may apply in claims under the Rehabilitation Act. *Marvin H. v. Austin Indep. School Dist.,* 714 F.2d 1348, 1357 & n. 14 (5th Cir.1983). But because three of the five Justices who interpreted proof of intentional discrimination to be unnecessary in *Guardians Ass'n,* 103 S.Ct. at 3223 n. 2, reasoned "that, although Title VI itself requires proof of discriminatory intent, the administrative regulations incorporating a disparate impact standard are valid," the applicability of the Title VI standard to section 504 is unclear. *But see Jennings v. Alexander,* 715 F.2d 1036, 1041–42 (6th Cir.1983). To the extent it is applicable, section 504 appears to parallel the EAHCA, under which damages are available only in cases of bad faith or other exceptional circumstances. *See Anderson v. Thompson,* 658 F.2d at 1214. A clearer consequence of basing a claim on section 504 may be the availability of attorney's fees. *See* 29 U.S.C. § 794a(b) (Supp. V 1981).

**5.** Our holding is not at odds with our prior decisions in *Adashunas v. Negley,* 626 F.2d 600, 603 (7th Cir.1980), and *Lloyd v. Regional Transp. Auth.,* 548 F 2d 1277, 1287 (7th Cir. 1977), where we stated that the Rehabilitation Act does not require exhaustion of administrative remedies. In *Lloyd* we excused the otherwise-applicable exhaustion requirement because of the absence of administrative reme-

## III

We have reviewed the plaintiffs' statutory and constitutional section 1983 claims and their statutory and common law pendent state claims and find them to be without merit.[6] Because the remaining claims were properly dismissed on exhaustion grounds, we affirm the judgment of the district court.

dies to pursue. That is not true here because of the extensiveness of state and federal regulations and attendant administrative remedies in the field of primary and secondary education.

6. The district court entered summary judgment on the state statutory claim because the plaintiffs failed to identify a particular violation of a particular provision of the Indiana special education law. It entered summary judgment on the state common law claim because Indiana does not recognize the tort of educational malpractice that the plaintiffs asserted some of the defendants had committed. Although both of these dispositions might better have been la-

beled dismissals for failure to state a claim, we do not disturb the district court's holding because no party raised the issue on appeal.