2015 IL App (1st) 131196

FIRST DIVISION
July 27, 2015

No. 1-13-1196

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 05 CR 8217 |
| | ) | |
| WALTER CAMPBELL, | ) | Honorable |
| | ) | Timothy Joseph Joyce, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE HARRIS delivered the judgment of the court, with opinion.
Presiding Justice Delort and Justice Connors concurred in the judgment and opinion.

**OPINION**

¶ 1    Defendant, Walter Campbell, appeals his conviction of first degree murder after a jury trial and his sentence of natural life in prison.   On appeal, defendant contends his conviction must be reversed because (1) the jury improperly received the entire grand jury testimony of witness Chanarra Gunn which contained matters not brought up during the trial, violating his constitutional right of confrontation; (2) the State elicited a hearsay statement from a witness identifying defendant as the shooter when the witness herself could not identify defendant in court or in a lineup; and (3) his trial counsel was ineffective in failing to present an alibi defense, failing to present other witnesses who could have supported the defense, and failing to rehabilitate a defense witness with a prior consistent statement.   For the following reasons, we affirm.

¶ 2                                    JURISDICTION

¶ 3    The trial court sentenced defendant on March 1, 2013.    The trial court denied defendant's motion to reconsider sentence on March 26, 2013, and he filed a notice of appeal that same day.    Accordingly, this court has jurisdiction pursuant to article VI, section 6, of the Illinois Constitution and Illinois Supreme Court Rules 603 and 606, governing appeals from a final judgment of conviction in a criminal case entered below.    Ill. Const. 1970, art. VI, § 6; Ill. S. Ct. R. 603 (eff. Oct. 1, 2010); R. 606 (eff. Mar. 20, 2009).

¶ 4                                    BACKGROUND

¶ 5    Defendant's conviction arose from a shooting that occurred on May 7, 2003, at 6959 Dante Avenue in Chicago, Illinois, resulting in the death of Kevin Hoard, Jr.    At trial, Judith Rodgers testified that in the early evening of May 7, 2003, she was standing by her car at 69th and Dante when she observed four young men walk past her on the other side of her car.    The tallest one had a gun in his hand.    They walked into the middle of the street and the tall man and another started shooting south toward 70th and Dante.    She could not see the target of the shooting.    After about 10 shots were fired, the group ran past 69th Place into an alley. Rodgers then drove to 70th and Dante where she saw the victim on the ground.    He had been shot in the head.

¶ 6    Within five minutes, Rodgers spoke with officers at the scene and provided a description of the offenders.    She described two of the shooters as around five feet six inches tall, and the other two as about five feet four inches tall.    When shown photographs six days later, Rodgers identified the tallest man with the gun.    However, she was unable to identify anyone in a lineup the following day because "either the hair was different or he was bald, and I didn't want to identify an innocent person.    I couldn't recognize him."    Rodgers also testified, over defense

counsel's objection, that she later learned the person she identified in the photograph was Walter Campbell.

¶ 7    Chanarra Gunn testified that at the time of the shooting she was 14 years old.   That evening, she and her sister, Tianna Clark, were on the front porch of a row house at 6959 South Dante with Tira Brown, Anthony ("Ant") Lofton, Daryl ("Man Man") Hamilton, and the victim Kevin ("Boo") Hoard.   Gunn heard more than 10 gunshots and she ran to the side of a wall in front of the house.   The victim pushed her sister down and then fell to the ground.   When the shooting stopped, Gunn saw three or four boys wearing black hoodies run down the alley on Dante.

¶ 8    At trial, when asked whether she recognized two of the boys, Gunn responded, "I really didn't."   Gunn acknowledged that she spoke to the police five days after the shooting and she told them that she recognized two of the boys, one of them being defendant.   Gunn was familiar with defendant because he lived across the street from her.   She also gave that information to an assistant State's Attorney.   In photo arrays, Gunn identified defendant and Keon Corley as two of the shooters and she gave a handwritten statement to that effect.   In her statement, Gunn said that after she heard the gunshots, she saw Corley and defendant standing in the street and defendant was shooting a gun in her direction.

¶ 9    Gunn also testified before a grand jury in 2005.   At trial, she acknowledged that she had spoken to the grand jury.   Gunn stated that she did not remember telling the grand jury that she saw five or six guys in black hoodies carrying guns, and that she recognized defendant, Corley, and another person she identified as "Mark."   She also did not recall telling the grand jury that no threats or promises were made to her in exchange for her testimony.   Gunn stated that she

had been under the influence of marijuana at the time of the shooting, and admitted that she first told the assistant State's Attorney of this fact two days prior to trial.

¶ 10    On cross-examination, Gunn testified that she identified defendant to police because she had been told that information by others.   She stated that she did not see the faces of the shooters because they were wearing black hoodies.    She could not recall whether she was under the influence of marijuana during the shooting, but stated she was "high" when she gave her statement to police.    She acknowledged that her initials and signatures appear on the statement.

¶ 11    Tina Brown testified that on May 7, 2003, she was on the front porch of 6959 South Dante with Gunn, the victim, and others when she heard gunshots.   It was early evening and although it was not sunny, it was still bright outside.    She turned in the direction of the gunfire and saw "[s]ome boys standing at the end of the alley."    Brown stated that she saw three boys and recognized two of them, defendant and Corley.   She knew them "from around the neighborhood."   Defendant and Corley "had guns aimed our way in our direction."    The following day Brown went to the police station and named defendant as one of the shooters. Brown returned to the police station the next day and police officers showed her an array of photographs.    After viewing the photos, Brown identified defendant and Corley as the shooters. Brown also identified defendant in court.   On cross examination, Brown stated that defendant had an altercation with either her brother or sister.    She stated it was a "one day thing" and not a continuous problem.   On redirect examination, Brown stated that she "clearly" saw defendant fire a gun.

¶ 12    Illinois State Police firearms examiner Fred Tomasek examined the firearms evidence recovered from the scene and from the victim.    Both .40 caliber cartridge cases and 9 millimeter Luger cartridge cases were recovered, as well as .22 fired cartridge cases.    One fired bullet was

retrieved from the victim. Tomasek concluded that three or four guns were used based on the recovered cartridge cases and the fired bullet.

¶ 13 After the State rested, defendant moved to preclude admission of his prior murder conviction should he testify. After weighing the probative value of the evidence against its prejudicial effect, the trial court found that "the nature of the offense is such substantial probative value for impeachment purposes that [it] outweighs the potential prejudicial effect." It denied defendant's motion and defendant elected not to testify.

¶ 14 Defendant pursued an alibi defense and moved to call his mother and his brother as witnesses. The State objected because defendant did not file an alibi defense or list his mother, Kathy Campbell, as a potential witness. Ms. Campbell had been present in the courtroom during the first day of trial despite an order excluding witnesses. Defense counsel explained that he did not give notice of an alibi defense because he had a bias against family alibis and did not clarify the issue with defendant. The trial court allowed the alibi testimony over the State's objection, finding that defense counsel did not blatantly withhold giving notice of the alibi defense.

¶ 15 Ms. Campbell testified that on May 7, 2003, defendant picked her up at work around 2 p.m. and they drove home to 7336 South Kingston. After arriving home, defendant went to the basement and when her younger son, Willie, came home from school, he joined defendant in the basement to play video games. Ms. Campbell recalled doing laundry in the basement that day. Although she did not see him at all times that day, Ms. Campbell knew that defendant stayed in the basement except for a period of time between 5–6 p.m. when he came up to smoke marijuana on the back porch. When she went upstairs around 10 p.m., defendant was still in the basement. On cross examination, Ms. Campbell was asked, "Now, you love Walter?" to which she

responded, "Yes." She also acknowledged that she was in court the day before and watched the witnesses testify.

¶ 16    Willie Campbell, defendant's brother, testified that after arriving home from school on May 7, 2003, around 3:30 p.m., he played video games with defendant in the basement. He stated that between 6:30 p.m. to 7 p.m., they ate chicken in the kitchen and then defendant went on the balcony to smoke marijuana. Willie returned to the basement and about five minutes later, defendant joined him and they played video games until 9 p.m. when Willie went to bed. On cross examination, Willie acknowledged that he spoke to his mother after she testified about the case and she told him what had happened in court. When asked whether he loved defendant "very much," Willie answered, "Yeah."

¶ 17    After presentation of the evidence, defense counsel objected to sending the jury a redacted version of Gunn's 2005 grand jury testimony. Defense counsel argued that the redacted copy was "confusing," and "the jury is going to wonder what else is there." The State responded that it sought to redact the testimony so "that only what would go back is what would be used as substantive evidence under 115-10.1. We also suggested to counsel if he wants the entire transcript to go back, we can do that, too." Defense counsel responded, "I don't want any of it to go back." The trial court determined that under the statute, the entire transcript could go back to the jury because "her testimony in this courtroom is wholly inconsistent with what she said in the written statement and what she said in the Grand Jury transcript." The trial court believed a redacted transcript would be more prejudicial because jurors could be "speculating about what it was that [Gunn] may have said that is being taken out of their purview." It overruled defense counsel's objection.

¶ 18    The grand jury transcript contained the following exchange between Gunn and the assistant State's Attorney:

"Q. How did you know these people?

A. Because they live on my block. They hang out on my block on 67th and Blackstone.

Q. Now, on your block what street gang hangs over there?

A. The GDs, Gangster Disciples.

Q. Ant and Man Man, were they in any street gang?

A. They were Four Corner Hustlers.

Q. What was the situation between the Four Corner Hustlers and the Gangster Disciples?

A. I guess they was into it because when [defendant's] brother got – upon [defendant's] brother being shot and killed.

Q. [Defendant's] brother was killed?

A. Yes.

Q. Was he also a Gangster Disciple?

A. Yes.

Q. When you say they were at it, do you mean they were at war?

A. Yes, because they used to come – because I hang on 69th and Dorchester where Dante and Park, and they used to come over.   People just – they used to shoot all the time.

Q. Was [the victim] in any street gang?

A. No."

¶ 19    The jury found defendant guilty of two counts of first degree murder, and the trial court merged the convictions into the single offense of intentional or knowing murder while armed with a firearm.   Defendant filed a *pro se* motion for a new trial which alleged that his trial

counsel was ineffective. Defendant requested a new attorney for posttrial motions and his counsel moved to withdraw. The trial court held a hearing pursuant to *People v. Krankel*, 102 Ill. 2d 181 (1984), to address defendant's allegations that defense counsel: (1) erred in not submitting the alibi defense before trial; and (2) failed to interview Robert Coker and Tenisha Coleman as potential witnesses. The notarized affidavit of Coker stated that he was near 68th and Dante on May 7, 2003, when he noticed four men walking south. They were wearing hoodies and he looked at their faces to see if he recognized any of them. Coker stated that although it was "hard to tell" because the hoodies partially covered their faces, he did not recognize defendant or Corley as one of the men. He kept walking and heard gunshots. He turned and saw the four men shooting at people near some rowhouses. A notarized letter from Coleman states that on May 7, 2013, around 7 p.m., she heard gunshots on her way to her aunt's house. She did not observe the shooting. The men involved wore masks and/or hoodies making it impossible for her to identify defendant or Corley.

¶ 20 The trial court rejected defendant's arguments. It found that defendant was not prejudiced by defense counsel's failure to submit an alibi defense prior to trial because he was allowed to present the alibi testimony at trial. As to whether defense counsel was ineffective for failing to present Coker and Coleman as witnesses, the trial court noted that defendant was not prejudiced because neither one definitively excluded defendant as the shooter. The trial court also denied defendant's request for a new attorney and for a new trial.

¶ 21 At the sentencing hearing, the state established that defendant had been convicted of first degree murder, and two counts of attempted murder, in 2008. The trial court sentenced defendant to natural life imprisonment, to run concurrently with his sentence in his previous

murder conviction. Defendant filed a motion to reconsider the sentence which the trial court denied. Defendant filed this timely appeal.

¶ 22                                    ANALYSIS

¶ 23    Defendant contends that the trial court erred in sending the entire grand jury testimony of witness Chanarra Gunn back with the jury for deliberations, where it contained matters not brought up during the trial. The State argues that defendant acquiesced to the decision and therefore cannot complain of error on appeal. See *People v. Greenwood*, 2012 IL App (1st) 100566, ¶ 35 (a defendant who procures, invites, or acquiesces to the admission of evidence, even if the evidence is improper, cannot complain of the admission on appeal). Although defense counsel initially objected only to the redacted version of the testimony going back with the jury, when the State suggested that the entire transcript could go to the jury counsel responded, "I don't want any of it to go back." Defense counsel did not invite this error.

¶ 24    We note that defendant forfeited this issue for review when he failed to include it in a posttrial motion. See *People v. Enoch*, 122 Ill. 2d 176, 186 (1988) (to preserve an issue for review a party must object at trial and raise the issue in a posttrial motion). However, defendant asks that this court consider his argument as plain error. The plain error doctrine allows a reviewing court to address unpreserved errors when: (1) the evidence is so closely balanced that the error alone threatens to tip the scales of justice against defendant, or (2) the error is so serious that it affects the fairness of defendant's trial and challenges the integrity of the judicial process. *People v. Herron*, 215 Ill. 2d 167, 178-79 (2005). First we must determine whether any error occurred. *People v. Thompson*, 238 Ill. 2d 598, 613 (2010).

¶ 25    The trial court admitted Gunn's entire grand jury testimony as substantive evidence pursuant to section 115-10.1 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS

5/115-10.1 (West 2006)). Section 115-10.1 provides for the admission of prior inconsistent statements made by a witness in all criminal cases if (a) the statement is inconsistent with the witness's testimony at the trial, (b) the witness is subject to cross examination about the statement, and (c) the statement "was made under oath at a trial, hearing, or other proceeding." *Id.* Whether a prior inconsistent statement is admissible under section 115-10.1 is a determination within the sound discretion of the trial court, and a reviewing court will not disturb the trial court's decision absent an abuse of discretion. *People v. Flores*, 128 Ill. 2d 66, 87-88 (1989). The trial court abuses its discretion if its determination is arbitrary, fanciful, unreasonable, or when no reasonable person would take the same view. *People v. Illgen*, 145 Ill. 2d 353, 364 (1991).

¶ 26   Defendant acknowledges that the trial court properly admitted Gunn's prior inconsistent statements pursuant to section 115-10.1. He argues, however, that by admitting her entire grand jury testimony the trial court erroneously allowed evidence of motive, gang membership, and other crimes, issues Gunn had not testified about at trial. Specifically, defendant objects to the portion of the grand jury testimony where Gunn was questioned about the gang affiliations of people who hung around the neighborhood, the other shootings that have occurred there, and the fact that defendant's brother, who was a member of a gang, had been killed in a prior shooting.

¶ 27   We agree that the trial court erred in admitting this testimony. In *People v. Redd*, 135 Ill. 2d 252, 313-14 (1990), our supreme court determined that "[i]f a prior inconsistent statement is to be admitted in Illinois in a criminal trial as substantive evidence against a defendant, the statement must meet the requirements set out by the General Assembly in section 115-10.1. If the prior statement fails to meet these requirements, it is not admissible as substantive evidence." Section 115-10.1 provides that such a statement is admissible if it is inconsistent with the

witness's testimony at trial. The term "inconsistent" is not confined to "direct contradictions but 'may be found in evasive answers, *** silence, or changes in position.' [Citations.]" *Flores*, 128 Ill. 2d at 87. However, according to the clear language of the statute, the witness must have given testimony on the issue at trial. Gunn was not questioned about, nor did she offer testimony on, these issues during the trial. Since this testimony does not meet the requirements of section 115-10.1, the trial court abused its discretion in admitting it as substantive evidence. *Redd*, 135 Ill. 2d at 313-14.

¶ 28    Although the admission of this testimony was erroneous, it was harmless error. Courts have recognized that there exists a strong presumption against street gangs in the minds of people. *People v. Smith*, 141 Ill. 2d 40, 58 (1990). However, the trial court's erroneous admission of gang-related evidence does not automatically require reversal. *People v. Easley*, 148 Ill. 2d 281, 330 (1992). "Error in the admission of evidence is harmless when the competent evidence in the record establishes a defendant's guilt beyond a reasonable doubt and it can be concluded that a retrial without the erroneous evidence would produce the same result." *People v. Negron*, 297 Ill. App. 3d 519, 536 (1998).

¶ 29    Brown testified that at the time of the shooting, it was still bright outside. When she heard gunshots she turned in the direction of the gunfire and saw three boys. She recognized two of them as defendant and Corley whom she knew "from around the neighborhood." She stated that defendant and Corley "had guns aimed our way in our direction." The following day Brown went to the police station and named defendant as one of the shooters. Brown returned to the police station the next day and police officers showed her an array of photographs. After viewing the photos, Brown identified defendant and Corley as the shooters. Brown also identified defendant in court. Brown stated that she "clearly" saw defendant fire a gun. The

jury found Brown to be a credible witness. "The testimony of one witness if credible and positive is sufficient to convict, even if contradicted by the accused." *People v. Williams*, 252 Ill. App. 3d 1050, 1060 (1993).

¶ 30 Furthermore, the physical evidence retrieved at the scene corroborated the testimony of the State's witnesses. Rodgers, Brown and Gunn testified that they observed from three to five men in black hoodies, and that more than one in the group had a gun. Firearms examiner Tomasek testified that the firearms evidence recovered from the scene and from the victim included .40 caliber cartridge cases, 9 millimeter Luger cartridge cases, and .22 fired cartridge cases. He concluded that three or four guns were used based on the recovered cartridge cases and the fired bullet. All three witnesses gave similar descriptions of how the shooting occurred, ending with the group of shooters running into an alley. In light of this strong evidence, the result of defendant's trial would not have been different even absent the improperly admitted evidence. See *Negron*, 297 Ill. App. 3d at 536.

¶ 31 Defendant disagrees, arguing that he was prejudiced by the admission of the evidence referenced above. However, the cases he relies on as support, including *People v. Radovick*, 275 Ill. App. 3d 809 (1995), and *People v. Long*, 316 Ill. App. 3d 919 (2000), are distinguishable. In *Radovick*, the trial court erroneously allowed grand jury testimony implicating the defendant of other murders, which this court deemed "extremely prejudicial" in a murder trial and which "had no probative value whatsoever to the issues before the court." *Radovick*, 275 Ill. App. 3d at 821. In *Long*, the erroneous admission of an arrest report was "clearly prejudicial" because the jury was wavering between crediting the defendant's testimony and crediting that of the State's witnesses, and the report served to reinforce the State's witness testimony at trial. *Long*, 316 Ill. App. 3d at 928. Here, Gunn's grand jury testimony did not

implicate defendant in other crimes, nor did it reinforce the weak testimony of a State's witness. Furthermore, although the challenged testimony referenced gangs, the State never referred to it in presenting its case, nor did it mention gangs in its closing argument. As discussed above, in light of Brown's positive identification testimony and the corroborating physical and testimonial evidence, defendant was not prejudiced by the admission of this testimony. Since we find no prejudice, defendant's claim of ineffective assistance of counsel for allowing this evidence go to the jury also fails. See *People v. Easley*, 192 Ill. 2d 307, 317-18 (2000).

¶ 32    Defendant also argues that the admission of Gunn's entire grand jury testimony violated his constitutional right to confrontation, as well as section 115-10.1's requirement that the witness be subject to cross examination concerning her statement. Admission of a declarant's out of court statements does not violate the confrontation clause if the declarant testifies as a witness and is subject to full and effective cross examination. *Flores*, 128 Ill. 2d at 88 (citing *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985)). The confrontation clause guarantees an opportunity for effective cross examination, not cross examination that is effective in whatever manner or extent a defendant wishes. *People v. Hampton*, 387 Ill. App. 3d 206, 214 (2008).

¶ 33    In *Flores*, the witness recalled testifying before a grand jury but could not remember the substance of his testimony. *Id.* at 78-79. The witness acknowledged that the grand jury transcript contained an accurate description of his testimony. *Id*. The defendant argued that the witness's memory loss as to the content of his testimony denied the defendant his rights under the confrontation clause. *Id*. at 88. Our supreme court determined that a gap in a witness's recollection of the content of his prior statement "does not necessarily preclude an opportunity for effective cross-examination." *Id.* at 88. Citing to the United Supreme Court case of *United States v. Owens*, 484 U.S. 554, 561-62 (1988), the court in *Flores* reasoned that a witness

is subject to cross examination when he is put on the stand, under oath, and willingly responds to questions. *Flores*, 128 Ill. 2d at 90. Although the witness could not remember the substance of his testimony before the grand jury, he willingly answered questions, under oath, on the witness stand. Our supreme court found that the witness was sufficiently subjected to cross examination. *Id.*

¶ 34 In *Redd*, however, our supreme court made clear that the " 'mere fact' " a witness was present and "sat 'still long enough for questions to be put' to him" was not effective cross-examination within the meaning of section 115-10.1(b). *Redd*, 135 Ill. 2d at 312. In *Redd*, the witness took the stand but did not acknowledge his prior grand jury testimony and refused to respond willingly to questions put to him. *Id.* The court found that the witness was not subject to cross-examination within the meaning of section 115-10.1(b) because the witness could not defend or explain the inconsistencies in his testimony, " 'thus opening himself to full cross-examination at trial as to both stories.' " *Id.* (quoting *California v. Green*, 399 U.S. 149, 164 (1970)).

¶ 35 Here, Gunn acknowledged that she spoke to the grand jury although at the time of trial she did not remember much of the substance of her prior testimony. Attorneys from both sides had an opportunity to question her at the trial about her prior inconsistent testimony. Gunn responded that she had been under the influence of marijuana at the time of the shooting and stated that she identified defendant to police because she had been told that information by others. She stated that she actually did not see the faces of the shooters because they were wearing black hoodies. She also stated she was "high" when she gave her statement to police and acknowledged that her initials and signatures appear on the statement. At defendant's trial Gunn was on the stand, under oath, and she willingly responded to questions. As such, she was

subjected to cross-examination within the meaning of section 115-10.1(b) and the confrontation clause. *Flores*, 128 Ill. 2d at 90. See also *People v. Wheatley*, 187 Ill. App. 3d 371, 381 (1989) (witness who answered that he did not remember but willingly responded to every question was subject to proper cross examination); and *People v. Watkins*, 368 Ill. App. 3d 927, 931 (2006) (witnesses who responded " 'I don't recall,' " " 'I don't remember,' " or " 'I can't remember' " to virtually every question asked were sufficiently cross examined when defense counsel inquired about their ability to recall the circumstances of the crime).

¶ 36    Defendant next argues that the State improperly elicited a hearsay statement from a witness identifying defendant as the shooter to overcome that witness's inability to identify defendant at trial. Witness Rodgers testified that she saw the shooting and within five minutes, she provided officers with a description of the offenders. She identified the tallest man with the gun after viewing a photo array. However, she was unable to identify anyone in a lineup because "either the hair was different or he was bald, and I didn't want to identify an innocent person. I couldn't recognize him." Rodgers also testified, over defense counsel's objection, that she later learned that the name of the person she identified in the photograph was Walter Campbell. The State responds that defendant has forfeited this issue because he failed to include it in his posttrial motion. Alternatively, the State argues that although the trial court erred in permitting this testimony, the error did not prejudice defendant in light of the other strong identification evidence against him.

¶ 37    A reviewing court may address unpreserved error as plain error. *Herron*, 215 Ill. 2d at 178-79. However, the admission of hearsay identification testimony amounts to plain error "only where it serves as a substitute for courtroom identification or is used to strengthen and corroborate a weak identification." *People v. Hughes*, 259 Ill. App. 3d 172, 178-79 (1994).

Furthermore, the improper admission of hearsay evidence is harmless error where it is "merely cumulative or is supported by a positive identification and other corroborative circumstances." *People v. Prince*, 362 Ill. App. 3d 762, 776 (2005). In light of Brown's positive identification testimony, coupled with corroborating physical evidence and testimonial evidence from the other witnesses, the erroneous admission of this testimony was harmless and does not constitute plain error. Accordingly, defendant's claim of ineffective assistance of counsel for not properly preserving the issue also fails. See *Easley*, 192 Ill. 2d at 317-18.

¶ 38 Defendant argues that his trial counsel provided ineffective assistance in failing to present an alibi defense, failing to present other witnesses who could have supported the defense, and failing to rehabilitate an alibi witness. Ineffective assistance of counsel claims are reviewed pursuant to the standards set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), and adopted by our supreme court in *People v. Albanese*, 104 Ill. 2d 504 (1984). In order to prove ineffective assistance, defendant must show that his counsel's performance was deficient and that he was prejudiced by counsel's deficient performance. Failure to demonstrate prejudice defeats defendant's claim of ineffective assistance of counsel. *People v. Coleman*, 183 Ill. 2d 366, 397-98 (1998).

¶ 39 As the trial court noted, although defense counsel did not formally present an alibi defense, he was allowed to present defendant's mother and brother as witnesses who testified that defendant was at home when the shooting occurred. Since the alibi testimony was presented at trial, defendant was not prejudiced by counsel's omission and his claim of ineffective assistance must fail. See *Id.* at 397-98. Defendant also contends that his counsel was ineffective for failing to present witnesses Coker and Coleman, whose testimony would have supported his defense. However, as the trial court noted, neither witness definitively testified that defendant

was not the shooter. We do not see how this evidence would have helped defendant's case in light of Brown's strong identification testimony and other corroborating evidence, as discussed above.

¶ 40 As for defendant's contention that his counsel provided ineffective assistance when he failed to rehabilitate his mother with a prior consistent statement, this allegation involves matters contained outside of the record. Specifically, defendant argues that counsel should have introduced a police report made nine years prior to trial which mirrors Kathy Campbell's testimony in court. "As a general rule, where a defendant's ineffective assistance of counsel claim requires consideration of matters not included in the record on appeal, a postconviction relief proceeding is better suited to resolve that claim and the appellate court may properly decline to adjudicate the defendant's claim on direct appeal." *People v. Phillips*, 383 Ill. App. 3d 521, 544 (2008). See also *People v. Durgan*, 346 Ill. App. 3d 1121, 1143 (2004). Without knowing the contents of the report, we cannot determine whether counsel's failure to present the report as substantive evidence deprived defendant of effective assistance. Since defendant's claim of ineffective assistance of counsel requires consideration of matters not contained in the record, we decline to address it on direct appeal. *Phillips*, 383 Ill. App. 3d at 544; *Durgan*, 346 Ill. App. 3d at 1143.

¶ 41 For the foregoing reasons, the judgment of the circuit court is affirmed.

¶ 42 Affirmed.

# REPORTER OF DECISIONS - ILLINOIS APPELLATE COURT

THE PEOPLE OF THE STATE OF ILLINOIS,

                  Plaintiff-Appellee,

       v.

WALTER CAMPBELL,

                  Defendant-Appellant.

No. 1-13-1196

Appellate Court of Illinois
First District, First Division

July 27, 2015

JUSTICE HARRIS delivered the judgment of the court, with opinion.
Presiding Justice Delort and Justice Connors concurred in the judgment and opinion.

Appeal from the Circuit Court of Cook County.

The Honorable Timothy Joseph Joyce, Judge Presiding.

Michael J. Pelletier, State Appellate Defender, Office of the State Appellate Defender, 203 North LaSalle Street, 24th Floor, Chicago, IL 60601, (Alan D. Goldberg and Caroline E. Bourland, of counsel), for APPELLANT.

Anita Alvarez, State's Attorney, County of Cook, Room 309, Richard J. Daley Center, Chicago, IL 60602, (Alan J. Spellberg, Jon Walters and Nancy Colletti, of counsel), for APPELLEE.