Docket No. 108769.

IN THE

SUPREME COURT

OF

THE STATE OF ILLINOIS

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v.
RICHARD D. KITCH, Appellant.

*Opinion filed January 21, 2011.*

JUSTICE FREEMAN delivered the judgment of the court, with
opinion.
Chief Justice Kilbride and Justices Thomas, Garman, Karmeier,
Burke, and Theis concurred in the judgment and opinion.

**OPINION**

Following a jury trial, defendant Richard Kitch was convicted of
nine counts of predatory criminal sexual assault of a child and one
count of aggravated criminal sexual abuse. The circuit court of
Schuyler County sentenced him to nine consecutive natural life prison
terms for predatory criminal sexual assault of a child, and a concurrent
14-year extended term for aggravated criminal sexual abuse. The
appellate court ordered the natural life prison terms to be served
concurrently rather than consecutively, and affirmed in all other
respects. 392 Ill. App. 3d 108. For the reasons set forth below, we
affirm the judgment of the appellate court.

## I. BACKGROUND

In February 2005, the State charged defendant with multiple counts of sexual assault and abuse allegedly perpetrated against his stepdaughter, K.J.K., who was born January 8, 1991, and his stepson, M.J.B., who was born May 5, 1994. Specifically, the State charged defendant with predatory criminal sexual assault of a child (720 ILCS 5/12–14.1(a)(1) (West 2004)), alleging that, between March 2000 and March 2003, defendant (a) placed his penis in the mouth of K.J.K. (counts I and II); (b) allowed his penis to have contact with K.J.K.'s vaginal area (count III); (c) placed his penis in K.J.K.'s vagina (counts IV, V, and VI); and (d) placed his penis in the mouth of M.J.B. (counts IX, X, and XI). The State also charged defendant with aggravated criminal sexual abuse (720 ILCS 5/12–16(c)(1)(i) (West 2004)), alleging that in November 2002 he knowingly touched M.J.B.'s penis with his fingers for the purpose of sexual arousal (counts VII and VIII).[1]

Pursuant to section 115–10 of the Code of Criminal Procedure of 1963 (725 ILCS 5/115–10 (West 2004)), the State filed a pretrial notice of intent to introduce hearsay statements of K.J.K. and M.J.B. describing the alleged abuse. Defendant objected. At a hearing, Schuyler County Sheriff Don Schieferdecker (Don) and one of his employees, Anna Marie Schieferdecker (Anna Marie), testified to the circumstances of their interviews of the children and introduced the children's written statements, which Anna Marie and Don had transcribed. The State indicated K.J.K. and M.J.B. would testify at trial. The circuit court found the hearsay statements admissible under the statute, on the condition that the children testified.

Defendant fled the jurisdiction prior to trial and was subsequently tried *in absentia* in October 2005. The evidence at trial included testimony from K.J.K. and M.J.B.; their mother, Susan; Anna Marie and Don; an obstetric gynecologist; and two forensic scientists.

Dr. Victoria Nichols-Johnson, an obstetric gynecologist, testified she examined K.J.K. on July 3, 2003. K.J.K. told her that her "mom's husband" had touched her breasts and vagina. When Dr. Nichols-Johnson visually examined K.J.K.'s genital area, she observed

---

[1]Prior to trial, the State dismissed count VIII.

"changes in the hymenal ring" that suggested possible penetration by an external object. She encountered little resistance when inserting her fingers or a speculum into K.J.K.'s vagina, and opined that "something had been there before." According to Dr. Nichols-Johnson, it was "highly likely that [K.J.K.] had been abused."

Susan testified that she and her children moved in with defendant on December 16, 1999, and she married defendant on February 29, 2000. Thereafter, Susan noticed defendant "started to favor" K.J.K. and became less friendly toward M.J.B. Defendant also began disciplining the children. He spanked them with a leather strap and would "scream at them."

Susan testified further that defendant often hugged and kissed K.J.K., and would grab her buttocks and breasts. When K.J.K. was 11 years old, defendant tattooed her bare buttock while she was partially clothed and lying on the dining room table. When K.J.K. was 12, Susan observed defendant rubbing lotion on K.J.K.'s breasts. On one occasion, Susan saw defendant coming out of a shower he had been sharing with K.J.K. When Susan confronted him, he said he had been helping K.J.K. wash her hair.

In March 2003 Susan moved out of defendant's residence. As she and the children drove away, she assured K.J.K. and M.J.B. they would not have to live with defendant again. K.J.K. and M.J.B. then told her defendant had sexually abused them. Susan reported the allegations to the sheriff. In June 2003, Susan provided the sheriff with the comforter that K.J.K. had on her bed when they lived with defendant. Susan testified she and defendant never engaged in any sexual activity on the comforter.

Anna Marie testified she interviewed K.J.K. in March 2003 at the sheriff's department. Anna Marie wrote down the questions she asked K.J.K., followed by K.J.K.'s answers. The statement was admitted into evidence without objection.

Anna Marie testified regarding K.J.K.'s statement. In March 2000 K.J.K. was home alone with defendant when he came into her room. He asked her if she wanted to have sex and she said no. K.J.K. tried to leave, but defendant blocked the doorway, pushed her down on the floor, and forced his penis into her mouth. Later that day defendant returned to K.J.K.'s room and again forced his penis into her mouth.

When he was finished, he told her that if she told anyone, he would kill her. Anna Marie asked K.J.K. if this happened again, and she replied: "Anytime my mom was gone, in the shower, or sleeping late."

In the summer of 2001, K.J.K. was home alone with defendant. K.J.K. had blocked the entrance to her bedroom, but defendant forced his way in, pushed her down on the bed, and put his penis between her legs, rubbing his penis on her vaginal area. Defendant repeated this act almost every time K.J.K. was home alone with him until June 2002, when defendant began inserting his penis inside her vagina. After June 2002 defendant had sexual intercourse with K.J.K. about once a week.

K.J.K. testified consistently with her statement to Anna Marie regarding defendant forcing his penis into her mouth, between her legs, and into her vagina.[2] K.J.K. also explained that a couple of months after defendant began putting his penis between her legs, he started putting his fingers in her vagina, telling her he was doing it so his penis would eventually "fit." K.J.K. also described an instance when defendant's ejaculate dripped onto her comforter, and defendant told her to wipe it up with some paper towels. K.J.K. identified the comforter as the one Susan had testified she gave to the sheriff. K.J.K. also testified about defendant rubbing cocoa butter on her breasts, showering with her, and putting a tattoo on her right buttock.

Don, the Schuyler County sheriff, testified that in March 2003 he interviewed M.J.B. at the sheriff's office. Don wrote out the questions he asked M.J.B., followed by M.J.B.'s answers. The statement was admitted into evidence without objection.

Don testified regarding M.J.B.'s statement. Sometime after Thanksgiving 2002, defendant came into M.J.B.'s room, grabbed M.J.B.'s penis, and began rubbing it for about 30 seconds. In January

---

[2]K.J.K.'s direct testimony differed from her out-of-court statement with regard to the time defendant began inserting his penis inside her vagina, and the number of times this occurred. According to the transcribed statement, defendant began having sexual intercourse with K.J.K. in June 2002, and he repeated this act about once a week. According to K.J.K.'s direct testimony, which was less precise with regard to dates, this conduct apparently began about December 2000 or January 2001 and was repeated "a couple times a month."

2003, defendant took M.J.B. into the bathroom, put M.J.B.'s hand on defendant's penis, and told M.J.B. to move his hand up and down. M.J.B. did this for about one minute, and defendant ejaculated. Later that same month, defendant took M.J.B. into the bathroom, put his penis in M.J.B.'s mouth, and told him to suck it. M.J.B. told the sheriff that, subsequently, defendant forced him to perform this same oral act an additional three or four times. Don also testified about an April 2003 written statement by K.J.K. which described how defendant's ejaculate came to be on her comforter.

M.J.B. testified, in relevant part, that when he was about eight years old defendant touched M.J.B.'s penis in M.J.B.'s bedroom. Other incidents occurred in the bathroom. On one occasion, defendant forced M.J.B. to touch defendant's penis, and on three or four occasions defendant put his penis in M.J.B.'s mouth.

Forensic scientists at the Illinois State Police Forensic Science Laboratory testified that the deoxyribonucleic acid (DNA) profile identified in a semen stain on K.J.K.'s comforter matched defendant's DNA profile.

The jury convicted defendant on all 10 counts. Defendant filed a motion for a new trial, which the circuit court denied. In November 2005 the court sentenced defendant *in absentia*[3] to nine natural life prison terms for predatory criminal sexual assault of a child, each to run consecutively, and a 14-year extended-term sentence for aggravated criminal sexual abuse, to run concurrently.

The appellate court affirmed defendant's convictions but modified his natural life prison sentences from consecutive to concurrent terms. 392 Ill. App. 3d 108. The court also granted the State its statutory assessment of $50 against defendant as costs of the appeal. We allowed defendant's petition for leave to appeal. Ill. S. Ct. R. 315 (eff. Feb. 26, 2010).

---

[3]Although defendant was tried and sentenced *in absentia*, he subsequently returned to the jurisdiction, and has been in the custody of the Illinois Department of Corrections since March 6, 2007.

## II. ANALYSIS

### A. Direct Testimony of K.J.K. and M.J.B.

Defendant first argues K.J.K. and M.J.B. did not testify in enough detail to have "appeared" for cross-examination within the meaning of the confrontation clause. Specifically, defendant contends the State failed to ask K.J.K. and M.J.B. "about each incident in enough detail to establish each and every element of every count," and defendant was unable to engage in effective cross-examination, in violation of his right to confrontation under the sixth amendment (U.S. Const., amend. VI).

The State argues defendant forfeited this argument. "To preserve an alleged error for review, a defendant must raise a timely objection at trial and raise the error in a written posttrial motion." *People v. Cosby*, 231 Ill. 2d 262, 271 (2008). "The failure to object to alleged error at trial and raise the issue in a posttrial motion ordinarily results in the forfeiture of the issue on appeal." *People v. Allen*, 222 Ill. 2d 340, 350 (2006). Here, defendant did neither. He did not object at trial, as he does before this court, that the child witnesses were not available for cross-examination, such that admitting their hearsay testimony violated the confrontation clause. Nor did he contend in his motion for new trial that admission of the hearsay testimony violated his confrontation right; rather, he argued only that the hearsay statements were not sufficiently reliable, an apparent reference to section 115–10(b)(1), which requires a judicial determination that "the time, content, and circumstances of the statement provide sufficient safeguards of reliability" (725 ILCS 5/115–10(b)(1) (West 2004)). We therefore agree with the State that defendant has forfeited this issue.

Defendant however maintains that if we conclude there was forfeiture, we should review the issue under the plain-error doctrine. Rule 615(a), the basis for this doctrine, provides: "Any error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded. Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court." Ill. S. Ct. R. 615(a). The plain-error doctrine creates "a narrow and limited exception to the general rule of forfeiture, whose purpose is to protect the rights of the defendant and the integrity and reputation of the judicial process." *Allen*, 222 Ill. 2d at 353, citing *People v. Herron*, 215 Ill. 2d 167, 177 (2005). The defendant bears

the burden of establishing plain error. *Herron*, 215 Ill. 2d at 187.

We observe, initially, that defendant does not challenge in this court the adequacy of K.J.K.'s testimony with regard to counts I, II, and III. In his brief, defendant challenges the adequacy of the victims' testimony only with respect to counts IV, V, and VI (involving acts of vaginal penetration against K.J.K.) and counts VII, IX, X, and XI (involving M.J.B.).

The first step in plain-error review is to determine whether an error occurred. *In re M.W.*, 232 Ill. 2d 408, 431 (2009). In making this determination, we consider whether, as defendant argues, the State improperly failed to ask the victims about each incident in enough detail to establish the elements of each count. Counts IV through VI and IX through XI all charged defendant with predatory criminal sexual assault of a child (720 ILCS 5/12–14.1(a)(1) (West 2004)), and count VII charged him with aggravated criminal sexual abuse (720 ILCS 5/12–16(c)(1)(i) (West 2004)). To prove predatory criminal sexual assault of a child, the State needed to show that (1) defendant was 17 years of age or older when he (2) committed "an act of sexual penetration" with (3) a victim under the age of 13. 720 ILCS 5/12–14.1(a)(1) (West 2004). "Sexual penetration" is "any contact, however slight, between the sex organ or anus of one person by an object, the sex organ, mouth or anus of another person." 720 ILCS 5/12–12(f) (West 2004). As defendant acknowledged in the appellate court, when the State files multiple charges, "the State is not required to prove dates of commission," but only to provide "some way to differentiate between" the various counts. To prove aggravated criminal sexual abuse (count VII), the State needed to show that (1) defendant was 17 years of age or older when he (2) committed "an act of sexual conduct" with (3) a victim under the age of 13. 720 ILCS 5/12–16(c)(1)(i) (West 2004). "Sexual conduct" is "any intentional or knowing touching or fondling by the victim or the accused, either directly or through clothing, of *** any part of the body of a child under 13 years of age *** for the purpose of sexual gratification or arousal of the victim or the accused." 720 ILCS 5/12–12(e) (West 2004).

It is undisputed that defendant was over the age of 17 and the victims were under the age of 13 when the offenses occurred. The question, then, is whether the State, through the victims' direct

testimony, proved "an act of sexual penetration" with regard to counts IV through VI and IX through XI, and "an act of sexual conduct" with regard to count VII.

The counts pertaining to K.J.K. alleged defendant penetrated her vagina with his penis once in June 2002 (count IV); once between July 1, 2002, and February 28, 2003 (count V); and once on approximately March 1, 2003 (count VI). At trial, K.J.K. testified that, on multiple occasions, defendant "put his penis inside [her] vagina" while they were in her bedroom, adding that sometimes ejaculate ran down her leg onto her comforter and that "[o]ccasionally, after he was finished, [she] would go to the bathroom and it stung a little." While K.J.K.'s testimony was somewhat unclear as to when *every* incident occurred, it nevertheless established that at least three acts occurred between June 2002 (count IV) and March 2003 (counts V and VI). K.J.K. testified that defendant (1) first forced her to have oral sex "[a] couple months" after defendant married her mother in February 2000; (2) touched her vaginal area with his penis "[a] couple months after he had started doing it oral"; (3) put his fingers in her vagina two or three months later; and (4) began having vaginal intercourse with K.J.K. approximately three months after that. According to this testimony, defendant would have begun having vaginal intercourse with K.J.K. about December 2000 or January 2001. K.J.K. testified defendant repeated this act "a couple times a month" until K.J.K. moved out in March 2003.

The counts pertaining to M.J.B. alleged that (1) defendant touched M.J.B.'s penis in about November 2002 (count VII); and (2) on three occasions, twice in approximately January 2003 (counts IX and X) and once in February 2003 (count XI), defendant placed his penis in M.J.B.'s mouth. At trial, M.J.B. testified that defendant "[p]ut his hand on [M.J.B.'s] penis" when M.J.B. was about eight years old, and subsequently defendant placed his penis in M.J.B.'s mouth "[t]hree or four times." According to this testimony, defendant touched M.J.B.'s penis after May 5, 2002 (count VII), and placed his penis in M.J.B.'s mouth "three or four times" thereafter (counts IX through XI).

Accordingly, K.J.K.'s and M.J.B.'s direct testimony, standing alone, was sufficient to establish the elements of the relevant counts against defendant. We also conclude, largely for this reason, that K.J.K.'s and M.J.B.'s direct testimony was sufficient to allow for

effective cross-examination. Their direct testimony provided enough detail to allow for cross-examination within the meaning of the confrontation clause. Our review of the record shows that both K.J.K. and M.J.B. answered all of the questions put to them by defense counsel on cross-examination. Their answers were forthright. There was no indiction they were being evasive.

There is nothing in *People v. Learn*, 396 Ill. App. 3d 891 (2009), a case on which defendant relies, that compels a different result. In *Learn*, the defendant was charged with one count of aggravated criminal sexual abuse. The victim was his four-year-old niece. Prior to trial, the circuit court granted the State's section 115–10 motion to admit out-of-court statements made by the victim to her father and two police officers. The motion was granted on condition that the child testify. At trial, the victim testified to preliminary matters but then became too emotionally distraught to continue, and therefore did not testify on direct examination to any of the alleged incidents of sexual abuse. The circuit court concluded the child nevertheless had testified for purposes of section 115–10, and allowed the State to introduce her hearsay statements. The appellate court reversed, holding that the victim did not "testify" within the meaning of the statute. The court reasoned that a victim must give "accusatory testimony," *i.e.*, "confront the defendant and accuse him of [some]thing." *Learn*, 396 Ill. App. 3d at 898-901. The court stated: "[The victim's] spoken testimony was not incriminating; thus, defendant was not confronted by his accuser nor given the right to rigorously test the accusation against him through cross-examination." *Learn*, 396 Ill. App. 3d at 901-02. Here, by contrast, K.J.K. and M.J.B. "accused" defendant of multiple acts of sexual abuse, through their direct testimony. *Learn* is distinguishable from the case at bar.

Given that defendant has failed to demonstrate there was any error with respect to this issue, his forfeiture stands. See *People v. Keene*, 169 Ill. 2d 1, 17-18 (1995).


## B. Constitutionality of Section 115–10

Defendant next argues that section 115–10 is unconstitutional on its face. Defendant points to *Crawford v. Washington*, 541 U.S. 36 (2004), which reinterpreted the confrontation clause, and argues that,

in light of *Crawford*, section 115–10 violates the confrontation clause of the United States Constitution (U.S. Const., amend. VI) as well as that of the Illinois Constitution (Ill. Const. 1970, art. I, §8). Specifically, defendant contends the statute is unconstitutional because: (1) it improperly incorporates the now-defunct reliability standard for determining whether admission of hearsay testimony comported with the confrontation clause, and (2) it does not incorporate the limitations on admissibility imposed by *Crawford*. According to defendant, the hearsay statements in the case at bar were improperly admitted under an unconstitutional statute, section 115–10, and defendant "must receive a new trial."

Initially, there is a "strong presumption" that a legislative enactment passes constitutional muster, and a party challenging the constitutionality of a statute bears the burden of clearly establishing its invalidity. *People v. Thurow*, 203 Ill. 2d 352, 367 (2003). A statute is unconstitutional on its face only if no set of circumstances exists under which it would be valid. *Napleton v. Village of Hinsdale*, 229 Ill. 2d 296, 306 (2008). "Thus, so long as there exists a situation in which a statute could be validly applied, a facial challenge must fail." *Hill v. Cowan*, 202 Ill. 2d 151, 157 (2002). Whether a statute is constitutional is a question of law, which we review *de novo*. *People v. McCarty*, 223 Ill. 2d 109, 135 (2006).

Section 115–10 provides, in pertinent part:

"(a) In a prosecution for a physical or sexual act perpetrated upon or against a child under the age of 13 *** the following evidence shall be admitted as an exception to the hearsay rule:

(1) testimony by the victim of an out of court statement made by the victim that he or she complained of such act to another; and

(2) testimony of an out of court statement made by the victim describing any complaint of such act or matter or detail pertaining to any act which is an element of an offense which is the subject of a prosecution for a sexual or physical act against that victim.

(b) Such testimony shall only be admitted if:

(1) The court finds in a hearing conducted outside the

-10-

presence of the jury that the time, content, and circumstances of the statement provide sufficient safeguards of reliability; and

    (2) The child *** either:

        (A) testifies at the proceeding; or

        (B) is unavailable as a witness and there is corroborative evidence of the act which is the subject of the statement[.]" 725 ILCS 5/115–10 (West 2004).

Section 115–10 allows for a child victim's hearsay statement to be admitted under two scenarios: (1) the court deems the statement reliable and the child testifies at trial (subsections (b)(1) and (b)(2)(A)); or (2) the child does not testify, the statement is deemed reliable, and the allegations of sexual abuse are independently corroborated (subsections (b)(1) and (b)(2)(B)). Here, the circuit court admitted K.J.K.'s and M.J.B.'s hearsay statements under the first scenario, as both children testified at trial.

Under *Crawford*, the confrontation clause poses no restrictions on the admission of hearsay testimony if the declarant testifies at trial and is present "to defend or explain" that testimony.

> "[W]e reiterate that, when the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements. See *California v. Green*, 399 U.S. 149, 162 (1970). *** The Clause does not bar admission of a statement so long as the declarant is present at trial to defend or explain it." *Crawford*, 541 U.S. at 59 n.9.

Accordingly, where K.J.K. and M.J.B. testified at trial and were present to defend or explain their testimony on cross-examination, the admission of their hearsay statements under section 115–10 does not violate the confrontation clause.

### 1. *Ohio v. Roberts* Reliability Standard

Defendant argues, however, that section 115–10 is facially unconstitutional because it incorporates the now-repudiated reliability standard set forth in *Ohio v. Roberts*, 448 U.S. 56 (1980). Under *Roberts*, the presentation of hearsay testimony of an unavailable witness comported with the confrontation clause if the statement fell within a "firmly rooted hearsay exception" or showed "particularized

guarantees of trustworthiness." *Roberts*, 448 U.S. at 66. The language of section 115–10 tracks the *Roberts* standard in part because it allows hearsay statements of a child witness to be admitted only if–among other things–the circuit court finds that "the time, content, and circumstances of the statement provide sufficient safeguards of reliability" (725 ILCS 5/115–10(b)(1) (West 2004)).

In *Crawford*, however, the Supreme Court repudiated the *Roberts* reliability test. *Crawford* held that the confrontation clause requires the reliability of testimony to be tested through cross-examination, and that no judicial assessment of "reliability" may be substituted for this form of credibility testing. *Crawford*, 541 U.S. at 61-62. Now, under *Crawford*, testimonial statements of an unavailable witness may be admitted–regardless of their perceived "reliability"–only if the defendant had a prior opportunity to cross-examine the declarant. *Crawford*, 541 U.S. at 68.

Section 115–10 satisfies *Crawford* in part. Under this statute, a child's reliable hearsay statement, *i.e.*, one which has been found reliable under subsection (b)(1), is admissible only if (1) the child testifies (subsection (b)(2)(A)), or (2) the child "is unavailable as a witness and there is corroborative evidence of the act which is the subject of the statement" (subsection (b)(2)(B)). Under the second scenario, which does not apply here, a statement deemed reliable by a judge could conceivably be admitted if the child were "unavailable" and the statement was supported by "corroborative evidence." *Crawford*, however, requires something different: where the declarant is unavailable, the defendant must have had a prior opportunity for cross-examination. The situation is different under the first scenario–the one at issue in this case–because there the declarant is *not* absent, but *testifies* at trial and is present to defend or explain the testimony on cross-examination. See *Crawford*, 541 U.S. at 59 n.9. Admitting a hearsay statement under the first scenario thus comports with *Crawford*. See *People v. Cookson*, 215 Ill. 2d 194, 204 (2005).

That a hearsay statement admitted under section 115–10 must meet the *additional* reliability requirement of subsection (b)(1) is not problematic. See *People v. Reed*, 361 Ill. App. 3d 995, 1002 (2005). Indeed, the requirement of "sufficient safeguards of reliability" provides defendants with additional protection, *i.e.*, "protection over and above the confrontation clause." *Reed*, 361 Ill. App. 3d at 1002;

accord *People v. Cannon*, 358 Ill. App. 3d 313, 320 (2005). This additional reliability requirement does not affect the constitutionality of section 115–10 because hearsay testimony still must satisfy *Crawford*'s constitutional requirements, in addition to the statutory requirement of reliability. See *In re E.H.*, 224 Ill. 2d 172, 179-80 (2006).

### 2. "Blanket Prohibition"

Defendant next contends that section 115–10 is unconstitutional because it does not incorporate the limitations on admissibility imposed by *Crawford*. Specifically, defendant argues the statute is unconstitutional because it "fails to incorporate a blanket prohibition of testimonial statements" where the declarant is absent from trial and the defense had no prior opportunity for cross-examination. However, hearsay exceptions such as section 115–10 need not be coextensive with the scope of the confrontation clause to pass constitutional muster. See *California v. Green*, 399 U.S. 149, 155 (1970) (although "it may readily be conceded that hearsay rules and the Confrontation Clause are generally designed to protect similar values," the overlap need not be complete).

Indeed, the evidentiary question of whether hearsay testimony satisfies a statutory exception (such as section 115–10) is separate from, and antecedent to, the issue of whether admitting the testimony satisfies the confrontation clause. See *In re E.H.*, 224 Ill. 2d at 179-80 (courts must engage in two-step analysis, first statutory and then constitutional, to determine admissibility of hearsay testimony). Because testimony is admissible only if it meets *both* evidentiary and constitutional requirements, the two standards need not be identical.

In sum, we reject defendant's argument that section 115–10 is facially unconstitutional in light of *Crawford*'s reinterpretation of the confrontation clause.

### C. Statutory Assessment

Defendant's final argument concerns the appellate court's grant to the State of its statutory assessment of $50 against defendant as costs of this appeal.

Section 4–2002 of the Counties Code provides that a State's Attorney in a county such as Schuyler is entitled to a fee of $50 "[f]or

each case of appeal taken from his county *** to the Supreme or Appellate Court when prosecuted *** by him." 55 ILCS 5/4–2002(a) (West 2008). Defendant argues that the appellate court here erred in ordering him to pay this $50 fee because the State's Attorneys Appellate Prosecutor (SAAP), and not the Schuyler County State's Attorney herself, prosecuted his appeal.

This is an issue of statutory construction, which is reviewed *de novo*. *People v. Cardamone*, 232 Ill. 2d 504, 511 (2009). When construing a statute, this court seeks "to give effect to the legislature's intent," considering "the subject [the statute] addresses and the legislature's apparent objective in enacting it," and adopting the plain and ordinary meaning of the statutory terms. *Cardamone*, 232 Ill. 2d at 512.

Under the applicable statutory scheme, it appears that any case in which SAAP appears is, by necessity, prosecuted or defended by a State's Attorney. See 55 ILCS 5/3–9005 (West 2008) (it is State's Attorney's duty to commence and prosecute all criminal actions arising out of his or her county). Moreover, under section 4.01 of the State's Attorneys Appellate Prosecutor's Act, SAAP attorneys are authorized to "represent the People of the State of Illinois" in the appellate court when "requested to do so and at the direction of" a State's Attorney. 725 ILCS 210/4.01 (West 2008). Once taking on this representation, SAAP attorneys may prepare, file and argue briefs in the appellate court "with the advice and consent of the State's Attorney." Under this statute, it appears that State's Attorneys retain a central role in an appeal even where they utilize SAAP's services.

We conclude, contrary to defendant, that the appellate court correctly granted the State its $50 statutory assessment in this case.

III. CONCLUSION

We affirm the judgment of the appellate court.

Affirmed.