# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *People v. Greenwood*, 2012 IL App (1st) 100566

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. FRANK GREENWOOD, Defendant-Appellant. |
| District & No. | First District, Second Division<br>Docket No. 1-10-0566 |
| Filed<br>Rehearing denied | March 30, 2012<br>April 27, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Defendant's convictions for predatory criminal sexual assault and aggravated criminal sexual abuse were upheld over his contentions that the trial court improperly bolstered the victim's testimony by admitting the hearsay statements of multiple witnesses pursuant to section 115-10 of the Code of Criminal Procedure and other crimes evidence that was not relevant to the charged offenses, and that the trial court failed to instruct the jury that it could consider a witness's age in assessing her credibility, where defendant forfeited these issues. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 07-CR-13421; the Hon. Colleen McSweeney-Moore, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Michael J. Pelletier, Alan D. Goldberg, and Melinda Grace Palacio, all of
State Appellate Defender's Office, of Chicago, for appellant.

Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg,
Katherine Warnick, and Peter Maltese, Assistant State's Attorneys, of
counsel), for the People.

Panel

PRESIDING JUSTICE QUINN delivered the judgment of the court, with
opinion.
Justice Cunningham concurred in the judgment and opinion.
Justice Harris dissented, with opinion.

**OPINION**

¶ 1    Defendant, Frank Greenwood, appeals his conviction after a jury trial of predatory
criminal sexual assault and aggravated criminal sexual abuse, and his consecutive sentences
of six years' and three years' imprisonment. On appeal, Greenwood contends: (1) the trial
court erred in admitting hearsay statements of multiple witnesses pursuant to section 115-10
of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/115-10 (West 2006))
because such statements were cumulative and improperly bolstered the victim's testimony,
and thus exceeded the intended scope of section 115-10; (2) the trial court erred in allowing
other crimes evidence of Greenwood's past drug use where it was not relevant to the charged
offenses and served only to imply that he had a propensity to commit crimes; and (3) he was
denied a fair trial where the trial court failed to instruct the jury that it could consider a
witness's age in assessing her credibility. For the following reasons, we affirm.

¶ 2                                    JURISDICTION
¶ 3    The trial court sentenced Greenwood on February 19, 2010, and he filed a timely notice
of appeal on February 26, 2010. Accordingly, this court has jurisdiction pursuant to article
VI, section 6, of the Illinois Constitution and Illinois Supreme Court Rules 603 and 606,
governing appeals from a final judgment of conviction in a criminal case entered below. Ill.
Const. 1970, art. VI, § 6; Ill. S. Ct. R. 603 (eff. Oct. 1, 2010); R. 606 (eff. Mar. 20, 2009).

¶ 4                                    BACKGROUND
¶ 5    Greenwood was charged with multiple counts of predatory criminal sexual assault and
other sexual offenses based upon allegations involving Greenwood and his then eight-year-
old daughter, R.G., for the time periods of March 31 through May 6, 2007, and May 19 to
May 20, 2007. Prior to trial, the court held a section 115-10(b)(1) hearing (725 ILCS 5/115-

10(b)(1) (West 2008)) to ascertain the admissibility of out-of-court statements R.G. made to various adults, including Joan Bauer (R.G.'s great-grandmother), Joan Wertz (R.G.'s mother), Danielle Butts (forensic interviewer from the Chicago Child Advocacy Center), and Elisabeth Damia (Department of Children and Family Services (DCFS) investigator). After the four witnesses testified, the parties proceeded to argument. Defendant's trial counsel argued that the State had failed to meet its burden under section 115-10 (b)(1) that "the time, content, and circumstances of the statement[s] provide sufficient safeguards of reliability." 725 ILCS 5/115-10(b)(1) (West 2008).

¶ 6    Unlike defendant's argument on appeal, defendant's trial counsel repeatedly argued that the witnesses' testimony was inconsistent with one another's testimony. Comparing the mother's testimony to the grandmother's testimony, trial counsel argued "no[w] the phrasing changes. The phrasing changes to 'touching privates,' to 'weird places,' to 'coochie,' and all sorts of other suggestions. There is no consistency in the retelling of the story as to the mother." After reciting the testimony of Butts and Damia, trial counsel argued, "What we have in this situation is four different terminologies, and I would suggest that that weakens the State's position." The trial court found that the statements made to the outcry witnesses were "trustworthy and reliable as to the time, content, and circumstances in which they were made" and were admissible only if the victim testified. The trial court also found that R.G.'s statements to Bauer and Wertz on May 22, 2007, were "completely spontaneous" and qualified as "hearsay outcr[ies]."

¶ 7    Prior to trial, citing section 115-3 of the Code, defendant's trial counsel filed a "Motion to Allow Hearsay Statements Made to Medical Personnel," seeking to elicit statements made by R.G. to registered nurse Nancy Healy when she was seen by medical personnel at South Suburban Hospital. The State had no objection and the trial court granted the defense motion.

¶ 8    Greenwood also filed a motion *in limine* to preclude the State from introducing evidence or testimony of his prior drug use in its case in chief. When the court asked the State whether it planned to elicit such evidence, the State responded that "[w]e are not planning to elicit that; however, there is a divorce in this case and there are issues regarding the visitation, but I have already instructed my witness to not say anything about the defendant's rehab or his drug use." The court granted Greenwood's motion, but warned the defense that "putting the defendant's credibility in issue might open the door" to the evidence.

¶ 9    R.G., who was 11 years old at the time, testified at trial. Greenwood and R.G.'s mother, Wertz, divorced when R.G. was less than two years old. R.G. lived with her mother while Greenwood lived in a two-bedroom apartment 45 miles away in Chicago Ridge. He had visitation with R.G. every other weekend. R.G. testified that in 2007, when she was eight years old, she and Greenwood attended two father-daughter dances. A dance was scheduled for March 2007, but R.G. informed Greenwood that she would be attending that dance with her stepfather. Greenwood was not pleased.

¶ 10   She testified further that the weekend after the March dance, she stayed at her father's apartment. R.G. slept in a bunk bed in Greenwood's bedroom. One night, after R.G. fell asleep, Greenwood picked her up and put her in his bed. While next to her in bed, Greenwood touched her "cuchie" or the part of her covered by a bottom bathing suit. He

touched her about 10 to 15 times in this manner over the course of subsequent visits. After the fifth time, R.G. asked what he was doing and Greenwood told her that if she told anyone he would hurt her mother.

¶ 11    R.G. eventually told her great-grandmother that Greenwood was touching her in her "lower front area." When her mother returned home, R.G. testified that she told her that her father "touched her in the lower front area." A woman named Elisabeth (Damia) from DCFS came to school to speak with her and explained the difference between "good" and "bad" touches. When she asked R.G. whether anyone had touched her in a "bad" area (areas of the body covered by a bathing suit), R.G. responded that her father had touched her in that manner. R.G. testified that she also spoke to Butts because her "dad had touched [her]" and Butts had R.G. identify parts of the body on a doll. R.G. further testified that on the same day, she went to the hospital where she spoke to, and was examined by, a nurse because her father "had touched her in the lower front area."

¶ 12    Bauer testified that she sometimes babysat R.G. while R.G.'s mother, Wertz, was out of the house. She had arrived at Wertz's house to watch R.G. on May 21, 2007, the day after R.G.'s weekend visit with Greenwood. On May 22, 2007, while she was babysitting, R.G. told her that Greenwood touched her on her "privates." She also told her that she did not tell her mother because Greenwood threatened to hurt her mother if R.G. spoke of the touching to anyone. When Wertz returned about an hour later, R.G. told her what had happened and Wertz called R.G.'s therapist. The therapist also spoke with R.G.

¶ 13    Wertz testified that on May 21, 2007, she took R.G. to an appointment with her therapist. R.G. could not complete the session, however, because she became ill and vomited. R.G. also suffered from emotional outbursts and would hit herself in the head, stating that she did not like herself and wished she had never been born. The next day, Wertz went out to lunch while Bauer watched R.G. After lunch, Wertz came home, where Bauer and R.G. "were waiting for [her]." Bauer then said, "Are you going to tell her or do I have to?" R.G. then told Wertz that her father "touches [her]–touched [her] in weird places." Wertz then asked, "Weird, where? Your boobs? Your butt? Your cuchie? Where?" to which R.G. responded, "Yes mom, my cuchie" before breaking into tears. Wertz called the therapist and R.G. had an opportunity to talk to her.

¶ 14    DCFS investigator Damia testified that her agency received a report regarding R.G. on May 22, 2007, and the following day she visited R.G. at her school. She introduced herself and asked R.G. if she understood the difference between lying and telling the truth. R.G. indicated that she understood. Damia then asked whether she knew of the places on her body where no one is supposed to touch except for her mother or her doctor. R.G. answered, "Yes." Damia asked whether anyone had ever touched her in a way that made her sad or uncomfortable and she answered "Yes" and when asked the name of the person, R.G. stated that it was her father. Per DCFS policy, Damia terminated the interview and waited for the agency to schedule a victim-sensitive interview in Cook County, where the incident occurred.

¶ 15    Butts testified that she conducted a victim-sensitive interview with R.G. on May 29, 2007. She conducted the interview in a small, child-friendly room with a two-way mirror. She and R.G. were alone and, using an anatomically correct female doll, Butts asked R.G.

-4-

to identify body parts. R.G. identified the buttocks as "butt," the vagina as a "private," and the breast as "chest." Butts also determined that R.G. knew the difference between truth and lies. She then asked R.G. "if anything had happened that she wanted to talk about" and R.G. stated that her father had touched her. R.G. responded that the first time he touched her was after the father-daughter dance, and the last time was the last weekend she visited his apartment.

¶ 16    R.G. told Butts that they had separate beds in Greenwood's bedroom, but he would take her out of her bed and place her on her back in his bed. He would then lay down next to her and touch her underneath her underwear. Greenwood wore only boxers when this happened, and he also told R.G. not to tell anyone or he would hurt her mother. When asked to identify on the doll where her father touched her, R.G. pointed to the vagina. Butts asked R.G. whether he touched her inside or outside the vagina, and she told her that he touched her in both places. When asked how it felt, R.G. responded that it hurt. After touching her, Greenwood would go to sleep and R.G. would get up and go back to her bed. The interview lasted about 15 minutes and Butts stated that she asked open-ended questions.

¶ 17    Healy testified that she is a sexual assault nurse examiner specializing in pediatrics. Healy met with R.G. immediately after her victim-sensitive interview. Healy asked R.G. if she knew why she was at the hospital, and she answered that it was because her father had touched her privates. When asked whether she was in pain on that day, R.G. responded that she was not in pain. Wertz informed Healy that the incident occurred about 10 days earlier. Healy stated that evidence can be collected up to seven days after contact so it was beyond the seven-day window. She examined R.G. and noted that her vagina was normal with no tears or lacerations in the hymen, and no redness inside the labia. An anal exam also revealed no tears or lacerations. Healy did notice some redness "in the inner cheeks" of the anal area, but it was consistent with R.G.'s statement that she recently suffered from a bout of diarrhea. Healy had no reason to believe the redness resulted from something such as a sexual assault. She testified that it is possible for someone to touch the outside and inside of the vagina without leaving marks, and that the hymen can heal even after penetration. It is also possible for someone to insert a finger into the vagina without causing injury.

¶ 18    Chicago Ridge Detective Dave Mitchell testified that he was assigned the investigation of R.G.'s case. On May 29, 2007, he observed the victim-sensitive interview through the two-way mirror. After identifying Greenwood as a suspect, he went to his residence in Chicago Ridge. Greenwood was home and accompanied the police to the station. Mitchell processed Greenwood at the station.

¶ 19    The State rested, and outside the presence of the jury, Greenwood moved for a directed verdict. The trial court denied the motion.

¶ 20    Greenwood's mother, Judy, testified for the defense. Ms. Greenwood stated that she saw R.G. regularly when she came for visitation with her son. Although R.G. would sometimes sleep at Greenwood's residence, she more often slept at her house. She acknowledged that R.G. slept at her house on one weekend in May 2007, and that on the second weekend she stayed with her father. She stated that she never told police R.G. stayed at her house because they never asked her that question. She also acknowledged that she declined to be

interviewed by the State's Attorney investigator. Ms. Greenwood testified that she had a "great relationship" with R.G. and she never said that her father touched her in an inappropriate manner.

¶ 21    Greenwood testified on his own behalf. He admitted that he entered an inpatient drug rehabilitation program from December 2006 to January 2007. He voluntarily took part even though he did not have a drug problem because he had used a little cocaine in the past and Wertz was "hounding" him that he was a drug addict. He wanted to prove to Wertz that he was not using drugs and was "clean." Greenwood stated that he did attend father-daughter dances with R.G. in 2005 and 2006, but maintained that he did not attend any dances in 2007. Instead, her stepfather took her to a dance on March 31, 2007.

¶ 22    Greenwood did have visitation the weekend of May 19-20, 2007. They spent the entire day at Navy Pier with Greenwood's girlfriend Stephanie and her son. They returned home and when it was time for bed, R.G. insisted on sleeping in Greenwood's bed. He started a movie in the bedroom and left to make popcorn. When he returned to the room, R.G. was asleep. He tucked her in and lay down next to her. He wore bicycle shorts and a T-shirt, and covered himself with a separate blanket. Greenwood testified that he never slept in boxer shorts in front of R.G. and stated that he did not even own boxer shorts. He denied carrying R.G. to his bed after she fell asleep in her own bed, and denied putting his hands down her pants. He also denied telling R.G. that he would hurt her mother if she told anyone of the touching.

¶ 23    The defense rested and the State presented no rebuttal. During his closing argument, defendant's trial counsel argued that the variances in the testimony of the victim and the outcry witnesses provided a basis to find the defendant not guilty: "this mechanism that arises is there to determine the truthfulness of the child. It's there to determine the likelihood if this happened or that it didn't. And, that's where the variance is important. Because the variance through the DCFS worker, through the victim's sensitive interview with Elizabeth Butts, through Nurse Nancy Healy, those variance are very important. Because that shows that there is a question whether or not it occurred ***. And, that's another example of that telephone game. Do you know the telephone game where if I would say something to you, Ma'am. And, then it would pass through. And, by the time it came out the other end, it's going to be way different. So, when the flow of information goes through all these agencies, all of these people, well intended, although sloppy some of them. It's going to be different." The jury found Greenwood guilty of aggravated criminal sexual abuse for the time period of March 31, 2007 through May 6, 2007, and guilty of predatory criminal sexual assault, aggravated criminal sexual assault by use of force or threat of use of force, aggravated criminal sexual assault unable to give knowing consent, criminal sexual assault, and aggravated criminal sexual abuse for the time period of May 19, 2007 to May 20, 2007. In his written motion for new trial, defendant's trial counsel did not raise the issue of the admission of the testimony of the outcry witnesses. Rather, he argued that the discrepancies between their testimony and the victim's testimony was a basis to grant a new trial. On February 19, 2010, the trial court sentenced Greenwood to consecutive terms of six years' imprisonment for predatory criminal sexual assault, and merging the other counts from the period of May 19-20, 2007, and three years for aggravated criminal sexual abuse, merging

the other counts from the period of March 31 to May 6, 2007. Greenwood filed this timely appeal.

¶ 24                                    ANALYSIS

¶ 25    Greenwood contends that the trial court erred in admitting the hearsay statements of Bauer, Wertz, Butts, and Damia pursuant to section 115-10. Taking an entirely different position than in the trial court, he argues on appeal that presenting a total of five witnesses other than R.G., who all testified to substantially the same facts, was cumulative and prejudiced him by improperly bolstering R.G.'s testimony, and section 115-10 did not intend such a result. Greenwood also argues on appeal that the trial court erred in admitting nurse Nancy Healy's testimony, even though his trial counsel filed a pretrial motion based on section 115-13, seeking to admit that same testimony.

¶ 26    Our supreme court has consistently instructed this court to consider whether issues raised on appeal have been forfeited:

> "Indeed, the ascertainment of its own jurisdiction is one of the two most important tasks of an appellate court panel when beginning the review of a case. The other is to determine which issue or issues, if any, have been forfeited. By giving careful attention to each of these tasks, a court can avoid the possibly unnecessary expenditure of judicial resources." *People v. Smith*, 228 Ill. 2d 95, 106 (2008).

¶ 27    Our supreme court recently considered the issue of forfeiture in the context of a child molestation case in *People v. Kitch*, 239 Ill. 2d 452 (2011), a case cited by neither party.

> " 'To preserve an alleged error for review, a defendant must raise a timely objection at trial and raise the error in a written posttrial motion.' *People Cosby*, 231 Ill. 2d 262, 271 (2008). 'The failure to object to alleged error at trial and raise the issue in a posttrial motion ordinarily results in the forfeiture of the issue on appeal.' *People v. Allen*, 222 Ill. 2d 340, 350 (2006). Here, defendant did neither. He did not object at trial, as he does before this court that the child witnesses were not available for cross-examination, such that admitting their hearsay testimony violated the confrontation clause. Nor did he contend in his motion for new trial that admission of the hearsay testimony violated his confrontation right; rather, he argued only that the hearsay statements were not sufficiently reliable, an apparent reference to section 115-10(b)(1), which requires a judicial determination that 'the time, content, and circumstances of the statement provided sufficient safeguards of reliability' (725 ILCS 5/115-10(b)(1) (West 2004)). We therefore agree with the State that defendant has forfeited this issue." *People v. Kitch*, 239 Ill. 2d at 460-61.

¶ 28    In the instant case, defendant also made no objection at trial to the admissibility of the testimony of the outcry witnesses. Unlike the defendant in *Kitch*, Greenwood did not raise the issue in any manner in his motion for a new trial. Also unlike the defendant in *Kitch*, Greenwood does not challenge the adequacy of the victim's testimony to affirm his convictions. Indeed, Greenwood's brief asserts, "Here, R.G.'s testimony was clear and consistent and provided sufficient detail describing the alleged incidents. Furthermore, R.G.'s testimony was corroborated by and additional details were provided through the

-7-

testimony of Nurse Nancy Healy, an expert in forensic nursing specializing in medical examinations of alleged sexual assault victims."

¶ 29    Greenwood argues that the testimony of R.G. was "clear and consistent" in part due to the fact that R.G. was 11 years old when she testified. Consequently, Greenwood argues, this case does not fall within the "narrow hearsay exception which was intended only to allow such outcry testimony when the case involved a young victim with difficulty testifying." Greenwood relies upon the holdings in *People v. Holloway*, 177 Ill. 2d 1, 10 (1997), and *People v. E.Z.*, 262 Ill. App. 3d 29, 34 (1994), as support for this proposition. The victims in both *Holloway* and *E.Z.* were over 13 years of age when they made their outcry statements. Consequently, these statements were held to be inadmissible under section 115-10. Here, the victim's outcry statements were made before she turned 13. Similarly, in *Kitch*, the two victims made their statements before they turned 13 years of age. In *Kitch*, the defendant's stepdaughter was 14 years old and defendant's stepson was 11 years old when they testified regarding sexual abuse that began when they were 9 and 8 years old, respectively. The supreme court did not consider the victims' ages at the time they testified as a basis to exclude their outcry testimony. The court held:

> "Accordingly, K.J.K.'s and M.J.B.'s direct testimony, standing alone, was sufficient to establish the elements of the relevant counts against defendant. *** Their answers were forthright. There was no indication they were being evasive." *People v. Kitch*, 239 Ill. 2d at 464.

Based on their analysis, the supreme court rejected defendant's assertion that the plain error doctrine applied, consequently, "[Defendant's] forfeiture stands. See *People v. Keene*, 169 Ill. 2d 1, 17-18 (1995)." *People v. Kitch*, 239 Ill. 2d at 465.

¶ 30    In *Keene*, the court also considered Supreme Court Rule 615(a):

> "Any error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded. Plain errors or defects affecting substantial rights shall be disregarded. Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court." Ill. S. Ct. R. 615(a).

The court held: "Assuming that prior consistent statements in fact were used improperly ***–a point the State by no means concedes–the claim does not implicate a substantial right." *People v. Keene*, 169 Ill. 2d at 18.

¶ 31    As to defendant's argument that allowing four outcry witnesses (excluding nurse Healy's testimony, which was sought by defense trial counsel) to testify constituted plain error based on the number alone, we disagree. In *Kitch*, the child victims' mother testified, as did an obstetrician and a sheriff. *People v. Kitch*, 239 Ill. 2d at 457-48. In *People v. Lofton*, 303 Ill. App. 3d 501, 508 (1999), the victim's mother, a nurse, a DCFS worker, and a police officer testified regarding outcry. In *People v. Moss*, 175 Ill. App. 3d 748, 755-56 (1995), the victim's brother, a doctor, and two policemen testified as to the deceased victim's outcry statements. In *People v. Branch*, 158 Ill. App. 3d 338, 340 (1987), the victim's mother, a rape counselor and a DCFS investigator testified as to the victim's outcry statements. The courts in *Lofton*, *Moss*, *Anderson* and *Branch* all rejected the defendant's argument on appeal that the evidence as to the outcry statements was cumulative. Further, this issue was

-8-

preserved in the trial court in each of those cases so the burden was on the State to prove that any error was harmless. Here, the burden that there was plain or obvious error which resulted in prejudice to the defendant remains squarely upon the defendant. *People v. White*, 2011 IL 109689, ¶ 133.

¶ 32    Based on all of the above, it is clear that the defendant has failed to show that any error occurred. The defendant has also failed to show that, if there had been any error, the verdict " 'may have resulted from the error and not the evidence' properly adduced at trial." *People v. White*, 2011 IL 109689, ¶ 133 (quoting *People v. Herron*, 215 Ill. 2d 167, 178 (2005)). Consequently, defendant's forfeiture stands.

¶ 33    On appeal, defendant cites *People v. Dabbs*, 239 Ill. 2d 277, 288-90 (2010), for its holding that a statute which abrogates the common law must be construed in a manner that preserves for the defendant all the protection that otherwise previously existed in our rules of evidence. Further, evidence admissible under one rule may nevertheless be inadmissible under another rule of evidence. We note that the court in *Kitch* explicitly upheld the constitutionality of section 115-10 against the defendant's argument that the statute improperly incorporated the now-defunct reliability standard for determining whether admission of hearsay testimony comported with the confrontation clause. *People v. Kitch*, 239 Ill. 2d at 465.

¶ 34    Defendant also argues on appeal that "the trial court erred in allowing the State to introduce evidence of Frank Greenwood's prior admission into drug rehabilitation" where such evidence was inadmissible as other crimes evidence. As the State points out, this is a misstatement of what occurred in the trial court. The trial court granted defendant's trial counsel's motion *in limine*, precluding the State from eliciting in its case in chief any evidence relating to the defendant's drug or alcohol use or rehabilitation. The issue was brought up again as the State rested its case in chief when the State asked to be allowed to bring up the issue if the defendant took the stand. Defense counsel responded: "I have no problem with the drug use, as your honor ruled, and if he takes the stand than his drug use or abuse might well be *** will be an issue of credibility and we will deal with that as it occurs."

¶ 35    During his direct examination of the defendant, defense counsel brought the information regarding his client's drug rehabilitation to the jury's attention and commented on the evidence in his closing argument. When a defendant procures, invites, or acquiesces in the admission of evidence, even though the evidence is improper, the defendant cannot contest the admission on appeal. *People v. Bush*, 214 Ill. 2d 318, 332 (2005). On appeal, defendant attempts to get around the forfeiture of this issue by asserting that his trial counsel provided ineffective assistance. This argument consists of exactly one paragraph and refers only to trial counsel's failure to raise this issue in his motion for new trial. This cursory argument is utterly deficient to defeat the imposition of the forfeiture doctrine.

¶ 36    Finally, defendant on appeal argues that the defendant was deprived of due process where the trial court "failed to instruct the jury that it may consider R.G.'s age in evaluating the believability of her testimony." Defendant concedes that his trial counsel failed to ask the trial court to include the phrase "her age" among the factors the jurors should consider in

determining the reliability of the witnesses' testimony. Defendant relies on Supreme Court Rule 451(c), which pertains to jury instructions in criminal cases, providing "substantial defects are not waived by failure to make timely objections thereto if the interests of justice require." Ill. S. Ct. R. 451(c) (eff. July 1, 2006).

¶ 37     The State responds that pursuant to Illinois Pattern Jury Instructions, Criminal, No. 11.66 (4th ed. 2000) (hereinafter, IPI Criminal 4th No. 11.66) the trial court did instruct the jury:

> "You have before you evidence that the victim made statements concerning the offense charged in this case. It is for you to determine whether the statements were made, and, if so, what weight should be given to the statements. In making the determination, you should consider the age and maturity of the victim, the nature of the statements, and the circumstances under which the statements were made."

¶ 38     The defendant argues that IPI Criminal 4th No. 11.66 refers to R.G.'s statements rather than to her testimony. While this is true, it is really a distinction without a difference. The record makes it abundantly clear that the jury was well aware that the victim was 11 years old when she testified regarding the sexual assaults committed by the defendant upon her when she was 8 years old. Both sides extensively argued the credibility of children witnesses. Further, for the same reasons we previously held that the plain error doctrine did not preclude the application of defendant's forfeiture of arguments regarding section 115-10, we decline to find that Rule 451(c) requires reversal of defendant's convictions in the instant case.

¶ 39                                     CONCLUSION

¶ 40     For all of the foregoing reasons, the defendant's convictions for aggravated criminal sexual abuse and predatory criminal sexual assault are affirmed.

¶ 41     Affirmed.

¶ 42     JUSTICE HARRIS, dissenting:

¶ 43     I respectfully dissent.

¶ 44     Defendant Greenwood contends that the trial court erred in admitting cumulative hearsay statements of Bauer, Wertz, Butts, and Damia pursuant to section 115-10. At a section 115-10 pretrial hearing defendant's motion to bar the statements was denied. He did not renew the motion during trial or include the issue in a posttrial motion. The majority concludes that defendant has forfeited review of this issue. I dissent because I believe that plain error occurred which allows this court to address the issue of whether five cumulative hearsay statements in a closely balanced case exceed the intended scope of section 115-10.

¶ 45     The plain error doctrine is a narrow exception to the general rule of waiver "whose purpose is to protect the rights of the defendant and the integrity and reputation of the judicial process." *People v. Herron*, 215 Ill. 2d 167, 177 (2005). It allows reviewing courts to address forfeited errors if "(1) the evidence is close, regardless of the seriousness of the error" or "(2) the error is serious, regardless of the closeness of the evidence." *Herron*, 215 Ill. 2d at 186-87. Defendant argues that the evidence against him was closely balanced warranting plain

error review of his claim. Under this prong, defendant bears the burden of showing prejudicial error, or that "the evidence was so closely balanced that the error alone severely threatened to tip the scales of justice against him." (Internal quotation marks omitted.) *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007).

¶ 46    At oral argument, the parties acknowledged that the trial court properly admitted the testimony of nurse Healy and the only testimony at issue is that of Bauer, Wertz, Butts, and Damia. In the case at bar, there was no physical evidence of sexual abuse or assault. Also, defendant made no inculpatory statements to the police. The jury's determination thus rested upon its judgment of the credibility of R.G. and defendant. See *People v. Steidl*, 177 Ill. 2d 239, 256 (1997); see also *Piatkowski*, 225 Ill. 2d at 567 (judgment rests on the reliability of witness testimony where no physical evidence connected the defendant to the crime, and the defendant made no inculpatory statements). Where judgment relies solely on the credibility of witnesses at trial, the evidence is closely balanced. *Steidl*, 177 Ill. 2d at 256.

¶ 47    The State, however, argues that even without the testimony of Bauer, Wertz, Butts, and Damia, the evidence was not closely balanced because nurse Healy's admissible testimony substantially corroborated R.G.'s testimony. It further argues that defendant conceded the admissibility of Healy's testimony and by arguing that the other statements are unnecessarily cumulative, he implied that Healy and R.G.'s testimony alone was sufficient to sustain a conviction. First we note that whether the evidence in a case is closely balanced is a separate question from whether the evidence is sufficient to sustain a conviction beyond a reasonable doubt. *Piatkowski*, 225 Ill. 2d at 566. Although portions of Healy's testimony corroborated R.G.'s account of defendant touching "her privates" at night when she visited him, she also testified that she examined R.G.'s vaginal and anal areas and found they appeared normal. She observed no tears or lacerations, and the redness she found "in the inner cheeks" of the anal area was consistent with R.G.'s statement that she had recently suffered from diarrhea. She had no reason to believe that the redness resulted from a sexual assault.

¶ 48    The substance of Healy's testimony did not overwhelmingly favor the State. It follows that the erroneous admission of cumulative testimony from four other witnesses corroborating R.G.'s testimony could have "severely threatened to tip the scales of justice against" defendant. See *People v. Hudson*, 86 Ill. App. 3d 335, 340 (1980) (improper bolstering of a witness's credibility is plain error because corroboration by repetition "preys on the human failing of placing belief in that which is most often repeated" (internal quotation marks omitted)). Thus he has met his burden of showing prejudicial error "affect[ing] the outcome in a closely balanced case" warranting plain error review. See *People v. Nitz*, 219 Ill. 2d 400, 415 (2006).

¶ 49    The majority cites *People v. Kitch*, 239 Ill. 2d 452 (2011), as support for its argument that defendant has forfeited review of this issue because he failed to object to the error at trial nor did he raise the issue in a posttrial motion. In *Kitch*, the defendant contended that since the State failed to ask its child witnesses " 'about each incident in enough detail to establish each and every element of every count,' [he] was unable to engage in effective cross-examination, in violation of his right to confrontation under the sixth amendment." *Kitch*, 239 Ill. 2d at 460. The defendant did not object at trial or raise the issue in a posttrial motion, and our supreme court declined to review the issue as plain error because it determined no error

-11-

occurred. *Id.* at 461, 465. The error alleged here involves section 115-10, not the confrontation clause.

¶ 50    Furthermore, the record in *Kitch* revealed physical evidence corroborating child witness K.J.K.'s testimony, including testimony by an obstetric gynecologist that she examined K.J.K.'s genital region and "observed 'changes in the hymenal ring' that suggested possible penetration by an external object" leading her to conclude that it was " 'highly likely that [K.J.K.] had been abused.' " *Id.* at 456-57. Also, forensic scientists tested a semen stain on K.J.K.'s comforter and found that the deoxyribonucleic acid (DNA) profile identified in the stain matched the defendant's profile. *Id.* at 459. In our case, no such physical and expert evidence was presented. I am of the opinion that *Kitch* is not controlling in this case as it is clearly distinguishable on the issue of whether error occurred, and on the evidence presented to the trial court.

¶ 51    The majority also disagrees with defendant's contention that allowing four outcry witnesses to testify (not including Healy) constituted error based on the numbers alone. It cites to *People v. Lofton*, 303 Ill. App. 3d 501 (1999), *People v. Moss*, 275 Ill. App. 3d 748 (1995), *People v. Branch*, 158 Ill. App. 3d 338 (1987), and *People v. Anderson*, 225 Ill. App. 3d 636 (1992), as cases where this court allowed multiple witnesses to testify as to a child witness's outcry statement.

¶ 52    Section 115-10 is silent as to the number of witnesses that may testify as to a child's hearsay statement. A statute's silence on an issue renders it ambiguous on the issue. *People v. Marshall*, 242 Ill. 2d 285, 297 (2011). Furthermore, these cases are distinguishable from the case at bar. In each of the cited cases the evidence was not closely balanced because the State also presented either physical evidence corroborating the victim's testimony or inculpatory statements the defendant had made to police. In contrast, the evidence in this case is closely balanced as no physical evidence was presented corroborating R.G.'s allegations and defendant made no inculpatory statements. See *Steidl*, 177 Ill. 2d at 256. This court in *Anderson* and *Moss* explicitly noted that in a more closely balanced case, it "would not hesitate to grant a defendant a new trial if it appears that the delicate scales of justice have been unfairly tilted by the sheer weight of repetition." *Anderson*, 225 Ill. App. 3d at 648; *Moss*, 275 Ill. App. 3d at 757-58.

¶ 53    Here, the scales of justice have been tilted by the weight of repetition. R.G. was 11 years old at the time of trial. She testified capably about the alleged incidents. If she had been a less capable witness, the need for adult witnesses to provide cumulative corroborative hearsay testimony would have been more compelling. However, during R.G.'s testimony, she capably recounted her conversations with each of the five adult witnesses and consistently repeated the same identical allegations against defendant each time. After she testified, the State pursuant to section 115-10 presented the five adult witnesses who testified again as to the same identical R.G. allegations against defendant. The jury heard R.G.'s allegations consistently repeated 10 times, aside from R.G.'s own testimony. Furthermore, no physical evidence corroborated her allegations nor did defendant make any inculpatory statements to police. I am persuaded that five witnesses' cumulative hearsay testimony was excessive and unfairly tilted the scales of justice in this case. Given these particular facts, I find that error occurred and defendant was prejudiced by the testimony of five witnesses repeating the

substance of R.G.'s complaint.

¶ 54      Accordingly, I would reverse the judgment of the circuit court and remand the cause for a new trial.